On the afternoon of December 26, 1983, the car driven by an intoxicated Audrey Helen Turner Cooper collided with the car driven by Mary Ellen Horn. Miss Horn died as a result of a massive skull fracture. Mrs. Cooper was indicted and convicted for murder and sentenced to thirty years' imprisonment.
At the time of the collision, Mrs. Cooper was intoxicated with a blood-alcohol level of 0.28%. On appeal, Mrs. Cooper argues that the admission of the results of the blood test was improper because she had not been arrested.
As a matter of constitutional law within the context of the present issue, a search and seizure will be valid only when made incident to a lawful arrest. Schmerber v. California,384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966). "Chemical tests which have been compelled prior to placing a motorist under arrest are almost uniformly excluded." R. Erwin, 3 Defense ofDrunk Driving Cases p. 32-26 (3rd ed. 1982). *Page 183 
As a matter of statutory law, a law enforcement officer has the authority to direct a motorist to submit to a chemical test of his blood, breath, or urine only after the person has been"lawfully arrested for any offense arising out of acts alleged to have been committed while the person was driving a motor vehicle on the public highways of this state while under the influence of intoxicating liquor." Alabama Code 1975, §32-5-192 (emphasis added). See also Maffett v. Roberts,388 So.2d 972, 977 (Ala. 1980). 3 Drunk Driving § 33.04.
Trooper Osburne Rutledge arrived at the scene of the collision while Mrs. Cooper was still in her wrecked car. He testified that "[s]he appeared to be intoxicated, in my professional opinion." He placed her under arrest for D.U.I. when he removed her from the car: "I laid my hand on her and told her we were taking her into custody for D.U.I." Mrs. Cooper was then taken to the hospital by ambulance.
Because Trooper Rutledge had to remain at the scene, he directed Talladega County Deputy Sheriff Travis Ford "to instruct the doctor to withdraw a blood sample from the defendant, Mrs. Cooper." Deputy Ford followed the ambulance to the hospital, ordered Mrs. Cooper to submit to a blood test, and directed Dr. Fritz to take a blood sample. Deputy Ford testified that Trooper Rutledge "instructed [him] that Mrs. Cooper was under arrest for D.U.I. and for [him] to follow her to the hospital, order a blood alcohol specimen and stay with her until he arrived, and if she was released before he got there, to take her to the Talladega County Sheriff's Office." Contrary to Trooper Rutledge's testimony Deputy Ford testified that "Trooper Rutledge didn't place her under arrest himself."
After completing his responsibilities at the scene of the crime, Trooper Rutledge went to the hospital and determined that Mrs. Cooper had been admitted. He testified, "If she hadn't been, we would have taken her on down into custody." The next day, the Trooper wrote Mrs. Cooper a uniform traffic citation for driving under the influence, which, at the time of Mrs. Cooper's trial for murder, was pending in the District Court of Talladega County. Upon her release from the hospital, Mrs. Cooper returned home.
On January 4, 1984, the District Attorney obtained an arrest warrant for Mrs. Cooper charging her with murder. She was arrested that same day.
At trial, no issue was made of whether or not Mrs. Cooper was under arrest at the time the blood sample was taken. At trial, the only objection to the admission of the test results was that "it wasn't drawn by someone with a valid permit or according to the regulations issued by the State Board of Health." [R-173]. There was no motion for a new trial.
The error argued on appeal has not been preserved for review. "[T]he assignment of a specific ground of objection to the question constituted a waiver of all other grounds." Carter v.State, 205 Ala. 460, 462, 88 So. 571 (1921). "It is well settled that all grounds of objection not specified are waived, and that the trial court will not be placed in error on grounds not raised at trial." Blackmon v. State, 449 So.2d 1264, 1266
(Ala.Cr.App. 1984). See also Stemple v. State, 352 So.2d 33, 36
(Ala.Cr.App. 1977).
Even had this issue been raised at trial and proper objection made, the present record supports the finding that Mrs. Cooper was in custody and under arrest at the time she submitted to the blood test.
"`An arrest consists in taking, under real or assumed authority, custody of another person for the purpose of holding or detaining him to answer a criminal charge or civil demand.'Cent. of Ga.Ry.Co. v. Carlock, 196 Ala. 659, 72 So. 261." Davis Allcott Co. v. Boozer, 215 Ala. 116, 117, 110 So. 28 (1926);Glass v. State, 424 So.2d 687, 689-690 (Ala.Cr.App. 1982). See also Wilson v. Orr, 210 Ala. 93, 95, 97 So. 133 (1923) ("What constitutes an arrest? `No manual touching of the body or actual force is necessary to constitute an arrest. It is sufficient, if the party is within the power of the officer and submits.'"). *Page 184 
In a case whose deciding facts are substantially identical to those involved in this case, the Supreme Court of New Hampshire wrote as follows:
 "RSA 594:1 defines an arrest as `the taking of a person into custody in order that he may be forthcoming to answer for the commission of a crime.' To constitute an arrest there must exist an intent on the part of the arresting officer to take the person into custody and a corresponding understanding by the person arrested that he is in custody. . . . No magic words or formal declaration of arrest is required. . . . Nor is it necessary that the defendant subsequently remain in custody or that a criminal complaint be instituted against him to have had a valid arrest. . . . Whether or not an arrest has in fact taken place depends upon the facts and circumstances of each case. . . . The officer in this case asserted as much control over the defendant as the situation reasonably permitted. He accompanied the defendant on the trip to the hospital and remained with him while in the emergency room. . . . In the emergency room defendant was informed that he was under arrest for driving while under the influence. He was also informed of his rights under the implied consent law at this time. . . . These statements, while not conclusive, E. Fisher, The Law of Arrest § 26 (1967), are evidence of `an intent on the part of the arresting officer to take the person into custody and a corresponding understanding by the person arrested that he is in custody.' That the defendant did not remain in the officer's custody after the blood sample was taken does not alter the fact that there had been an arrest. The officer could decide that, considering the defendant's condition and the seriousness of the offense, he should be allowed to remain in the hospital and answer the charges at a later date, without negating the fact that there had been an arrest.
 "We conclude that the facts in this case warrant the conclusion that the defendant was under arrest when he submitted to the blood test." State v. Rocheleau, 117 N.H. 792, 378 A.2d 1381, 1383 (1977) (citations omitted).
See also State v. Donahue, 420 A.2d 936, 937-38 (Me. 1980). We also conclude that the facts in this case warrant the conclusion that Mrs. Cooper was under arrest when she submitted to the blood test. The fact that Deputy Ford's testimony conflicted with that of Trooper Rutledge to whether or not Mrs. Cooper was ever arrested does not preclude a finding that she was in fact under arrest. "There is no rule of law which precludes a party from proving the facts of his case or defense by any witness he may call even though the testimonies of his various witnesses concerning a relevant fact may be in conflict with each other." C. Gamble, McElroy's Alabama Evidence, § 165.01 (9) (3rd ed. 1977).
Mrs. Cooper received a fair trial. The judgment of the circuit court is affirmed.
AFFIRMED.
All Judges concur.