[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1119 
The appellant, Melvin Harris, was convicted of murder, in violation of § 13A-6-2, Code of Alabama 1975. The trial court, following a jury trial, sentenced the appellant to life imprisonment.
The State's evidence tended to show the following:
The appellant, Melvin Harris, had been dating the victim, Sandra Craig, until the appellant was hospitalized following an accident. The victim, following the appellant's release from the hospital, would occasionally visit the appellant. She would do the appellant's laundry, cook for him, and clean his house.
The victim's mother, Mary Ellen West, testified that her daughter had gone to the appellant's house on Thursday, June 12, 1986, and that she received a telephone call from the appellant about 8:45 a.m. on Friday, June 13, 1986. Appellant told her that he had just killed her daughter and that she was lying on the bathroom floor. She telephoned her son and then the police. Ms. West, her son, and a policewoman arrived at the appellant's residence a short time later. The appellant met them at the door and took them to the bathroom, where the victim was lying face down on the bathroom floor. The victim had been shot twice, once in the neck and once in the chest.
Detective William T. Gaut of the Birmingham Police Department arrived at the scene at approximately 10:00 a.m. He testified that he observed the victim's body in the bathroom and noticed the appellant seated on a couch in the living room. Detective Gaut gave the appellant aMiranda warning and the appellant said that he understood his rights. Detective Gaut then asked the appellant what had happened and the appellant said "that he didn't really know, that burglars must have killed Sandra or must have shot Sandra." The appellant, when asked by Detective Gaut if he did not make a phone call to the victim's mother, said, "Okay, I killed the bitch."
Frank Johnson, the appellant's uncle, testified that the appellant telephoned him on the morning of the killing and told him that the victim had been shot, but that he did not know what had happened. Johnson testified that he asked the appellant if he had shot the victim and that the appellant replied "no." Johnson, who was at the scene when Detective Gaut arrived, testified that the appellant gave him two guns and told him to hide them, but that he turned the guns over to the police.
The appellant, Melvin Harris, testified in his own behalf. He testified that the victim was his girlfriend and had spent the night of June 12 with him but that she had left his house around 6:30 a.m. on the day of the killing. He testified that the victim returned a short time later holding her chest and indicated that she had been "hit." Harris said the victim went through the house, into the bathroom, and fell. He admitted calling the victim's mother but denied telling her that he had shot her daughter; he did not admit telling Detective Gaut that he "killed the bitch." Also, he admitted giving his uncle, Frank Johnson, two pistols, but maintained that he did *Page 1120 
not asked his uncle to hide them. He testified that he had the pistols for protection against burglars. Moreover, he testified that he was scared, because he had been convicted of murder in 1983 and placed on probation. He denied shooting the victim or knowing who had shot her. At trial, he said that, immediately after the victim fell, he saw a man in a van and that he asked the man to call the police and the paramedics.
 I
The appellant's first contention is that the trial court committed reversible error in its oral charge when it "summed up" the evidence, in contravention of § 12-16-11, Code ofAlabama 1975, and gave a conclusive effect that the jury should limit their assessment of the evidence as to "who was telling the truth." Specifically, he contends that the trial court incorrectly narrowed the jury's focus to whether the State's witnesses or the defense witnesses were telling the truth. Thereby, he contends, the trial court's actions "negated the investigatory weakness of the State's failure to use scientific tests to determine if Harris had in fact fired a weapon on or about June 13, 1987."
However, the record reflects that this issue is not preserved for appellate review, since the appellant made only general objections and those were insufficient to bring to the trial court's attention the specific grounds he now argues on appeal. The appellant's objections, at trial, were only that certain comments were misleading, confusing, or unclear. We believe that these general objections were not sufficient to bring the trial court's attention to the specific grounds he now argues on appeal.
To preserve alleged error in the trial court's oral instructions to the jury, the objection must be specific enough to point out the alleged error so as to allow the court to correct it. Ex parte Washington, 448 So.2d 404, 406 (Ala. 1984); Crumpton v. State, 402 So.2d 1081 (Ala.Cr.App.), writ denied, 402 So.2d 1088 (Ala. 1981); Ward v. State,376 So.2d 1112 (Ala.Cr.App.), cert. denied, 376 So.2d 1117 (Ala. 1979). Also, an objection to an oral charge must be specific and must clearly delineate the perceived defect in order to preserve the issue for appellate review. Davis v. State, 440 So.2d 1191,1194 (Ala.Cr.App. 1983).
Moreover, had this issue been preserved, it would be decided adversely to the appellant. Section 12-16-11, Code of Alabama
1975, states:
 "The court may state to the jury the law of the case and may also state the evidence when the same is disputed, but shall not charge upon the effect of the testimony. . . ."
The record reflects that the trial court correctly stated the disputed evidence, but it did not state that the appellant actually made admissions to the victim's mother or to Detective Gaut. The record shows that the trial court, in its oral charge, stated, "The state's case in some large part is bottomed on the defendant's alleged statement to Mrs. West . . . and . . . to Officer Gant." (Emphasis added.) However, the court goes on to state: "[T]he defendant says that he is not the agent of the lady's death. Doesn't know how she was shot and he has given testimony in that regard. We all understand that there are conflicts in the testimony between the defendant and Gaut and Mrs. West. . . . So you people will endeavor to resolve the issue."
We have reviewed the trial court's oral charge to the jury as a whole and found it to be correct. The trial court made it clear in its charge that the jury was to be the sole judge of the evidence, and at no time did the trial court intimate any opinion on, or comment on, the credibility of the witnesses.
In determining whether there is error in a jury instruction, the instruction must be considered as a whole. Harbor v. State,465 So.2d 455, 459 (Ala.Cr.App. 1984), writ quashed,465 So.2d 460 (Ala. 1985).
Harris's evaluation of the effect of the judge's charge is possible only because the particular remark of the judge is taken out of context. In Kennedy v. State, 472 So.2d 1092, 1104
(Ala.Cr.App. 1984), affirmed, 472 So.2d 1106 (Ala. 1985), cert. denied, *Page 1121 474 U.S. 975, 106 S.Ct. 340, 88 L.Ed.2d 325 (1985), we held:
 "A cardinal principle of appellate review of jury instructions is that 'a single instruction to a jury may not be judged in artificial isolation, but must be viewed to the context of the overall charge.' Cupp v. Naughten, 414 U.S. 141, 146-147, 94 S.Ct. 396, 400, 38 L.Ed.2d 368
(1973). '[T]he fact that isolated instructions are erroneous or misleading is no ground for reversal where the instructions as a whole present the case properly.' Harris v. State, 412 So.2d 1278, 1281
(Ala.Cr.App. 1982)."
We have carefully reviewed the record and find that the trial court's oral charge was not erroneous or misleading. However, even if a portion of it had been, that would not matter, because the charge, when viewed as a whole, presented the case correctly and does not warrant a reversal.
 II
The appellant's second contention is two-fold.
 A.
The first argument the appellant presents is that the court committed reversible error by refusing to give his requested jury charges six and seven which dealt with the possible bias, prejudice, anger, or ill will of any or all of the State's witnesses. The refused charges read as follows:
 "[Appellant's] Charge No. 6: The Court charges the jury that if any or all of the witnesses for the State have exhibited or admitted bias, prejudice, anger, or ill will against the Defendant, or from all of the evidence in the case you find such bias, prejudice, anger, or ill will on the part of all or any [of] the State's witnesses, and if these things, when considered by you in connection with all of the other evidence in the case, create in your minds a reasonable doubt of Defendant's guilt; you can not convict the Defendant.
 "[Appellant's] Charge No. 7: The Court charges the jury that if any or all of the witnesses for the State have exhibited or admitted bias against the Defendant, or from all of the evidence, in the case you find such bias on the part of all or any of the State's witnesses, and if these things, when considered by you in connection with all of the other evidence in the case, create in your minds a reasonable doubt of the Defendant's guilt, you should not convict Defendant."
The record reflects that the trial court adequately covered these refused charges in its oral charge by discussing the credibility of the witnesses and conflicting testimony.
The refusal of jury charges covering how the jury should determine credibility of witnesses was correct when the trial court's oral instructions substantially and fairly stated the principles embodied in the requested charges. Bates v. State,484 So.2d 1206, 1208 (Ala.Cr.App. 1986). See also Moore v.State, 457 So.2d 981, 989 (Ala.Cr.App. 1984), cert. denied,470 U.S. 1053, 105 S.Ct. 1757, 84 L.Ed.2d 820 (1985); Williams v.State, 451 So.2d 411, 418 (Ala.Cr.App. 1984).
Therefore, we find no reversible error in the trial court's refusal to give the appellant's requested charges numbered six and seven.
 B.
The appellant's second argument in this issue is that the trial court committed reversible error by refusing his requested jury charge number 15, which dealt with reasonable doubt and which reads as follows:
 "[Appellant's] Charge No. 15: The Court charges the jury that if after considering all the evidence in the case, that tending to show guilt together with the tendency [sic] to show innocence, there should spring up involuntarily in your minds from any part of the evidence a probability of the innocence of the Defendant, you should not convict the Defendant."
However, the record reflects that the trial court did charge on reasonable doubt, *Page 1122 
and the court adequately covered the appellant's requested charge.
A trial court does not commit prejudicial error in refusing to give a defendant's requested written charges on the reasonable doubt standard when the trial court's oral charge substantially and fairly covers the elements of the reasonable doubt standard. Irby v. State, 429 So.2d 1179, 1183
(Ala.Cr.App. 1983).
 III
The appellant's third contention is that the trial court committed reversible error when it overruled his objection to a comment made by the prosecution during closing arguments. Specifically, he contends that the prosecutor interjected his personal beliefs that the testimony given by the appellant was untruthful; that the prosecutor's beliefs were based upon facts not in evidence; and that the prosecutor violated his due process rights by commenting to the jury that he had exercised his right to remain silent after he was arrested and was given his Miranda warnings. However, the record reflects that part of this issue has not been correctly preserved for our review.
The prosecutor, during closing argument, made the following statements:
 "MR. BROWN: Well, I will ask you, ladies and gentlemen of the jury, if it is not a fact that Sergeant Gaut testified about Melvin and said that [Harris told him] burglars must have shot her. And he said, 'Didn't you call her mother and your uncle and tell them that you killed her?' And he said, 'Okay, I don't have anything else to say.' Well, it is a fair inference, ladies and gentlemen, from that evidence that until four hours ago nobody had ever heard anything about a man in a van being asked to call the police and paramedics —"
The defense counsel then objected and stated:
 "MR. NAIL: Again we are going to object to that, may it please the Court, on the same grounds as previously assigned. And ask for a mistrial."
The record reflects that the "same grounds as previously assigned" appears to refer to another objection made by the defense counsel in reference to the prosecutor's closing argument in which the objection and assigned grounds were stated as follows:
 "MR. NAIL: We object to that. That is a statement outside the evidence. I don't know whether that is true or not, that is a statement of counsel that is not part of the evidence and we object to it and ask for a mistrial."
This contention, i.e., that the prosecutor's comments violated the appellant's Fifth Amendment rights, has not been preserved for review because the reference to "the same grounds as previously assigned" refers to the argument that an earlier comment by the prosecutor was allegedly "outside the evidence" or was "not part of the evidence."
In Murray v. State, 494 So.2d 891, 893 (Ala.Cr.App. 1986), we held:
 "A specific ground of objection waives all other grounds. Cooper v. State, 474 So.2d 182, 183
(Ala.Cr.App. 1985). 'It is well settled that all grounds of objection not specified are waived, and that the trial court will not be placed in error on grounds not raised at trial.' Blackmon v. State, 449 So.2d 1264, 1266 (Ala.Cr.App. 1984)."
The portion of the appellant's argument based on the prosecutor's allegedly arguing facts not in issue is also to be decided adversely to him. The record reflects that the prosecutor was arguing an inference from the evidence and not a fact not in evidence. The record clearly reveals that the prosecutor stated: "[I]t is a fair inference . . . from that evidence that until four hours ago nobody had ever heard anything about a man in a van being asked to call the police." There was evidence that the appellant, at the scene of the crime, admitted to Officer Gaut that he "killed the bitch." However, at trial, the appellant testified that the victim left his home and returned a short time later saying that she had been "hit." The appellant testified that after the victim went into the bathroom *Page 1123 
and fell on the floor, he went outside and asked a man in a van to call the police and paramedics. The State's evidence and the appellant's version of the events were in direct conflict. It is readily apparent that the prosecution could draw a fair inference that the appellant was fabricating his testimony at trial concerning the mystery man in the van.
In Sasser v. State, 494 So.2d 857, 859-60 (Ala.Cr.App. 1986), we held:
 "While in argument to the jury, counsel may not argue as a fact that which is not in evidence; nevertheless, he may state or comment on proper inferences from the evidence and may draw conclusions from the evidence based upon his own reasoning. The prosecutor, as does defense counsel, has a right to present his impressions from the evidence. He may argue every legitimate inference and may examine, collate, sift and treat the evidence in his own way. Liberal rules are allowed counsel in drawing inferences from the evidence in their argument to the jury, whether they are truly drawn or not. Control of closing argument rests in the broad discretion of the trial judge and, where no abuse of discretion is found, there is no error. The trial judge can best determine when discussion by counsel is legitimate and when it degenerates into abuse." (Citations omitted.)
Moreover, statements of counsel in argument to the jury must be viewed as having been made in the heat of debate, and such statements are usually valued by the jury at their true worth.Sanders v. State, 426 So.2d 497, 509 (Ala.Cr.App. 1982). We find, therefore, that the prosecutor's statement did not constitute reversible error.
 IV
The appellant's final contention is that the trial court erred in denying his motion for a judgment of acquittal and his motion for a new trial. Specifically, he contends that there was insufficient evidence to support his conviction and that the State failed to establish the corpus delicti prior to the introduction of his alleged confession.
In the case at bar, the State's evidence established that the victim was found lying face down in the appellant's bathroom and that she had been shot twice. Forensic reports showed that the victim was fatally wounded by the bullet that penetrated her lung and heart. There was no evidence that the victim's death was a suicide or the result of an accident or from natural causes. The State's evidence tended to show that the victim's death was caused only by the criminal agency of another. Specifically, the State's evidence tended to show that the victim's death was caused by the appellant.
In Scanland v. State, 473 So.2d 1182, 1185 (Ala.Cr.App.),cert. denied, 474 U.S. 1035, 106 S.Ct. 602, 88 L.Ed.2d 581
(1985), we held:
 "In the prosecution of an accused for the offense of murder, the State must prove the corpus delicti which includes (1) the death of the victim named in the indictment, and (2) that death was caused by the criminal agency of another. The State must further show that the defendant caused the death of the victim and the intent to cause such death. . . . Further, circumstantial evidence alone may be sufficient in conjunction with other facts and circumstances which tend to connect the accused with the commission of the crime to sustain a conviction." (Citations omitted.)
In the case at bar, the record reflects that the State did prove the corpus delicti. In a prosecution for murder, the corpus delicti is a fact, proof of which may be made by circumstantial evidence. Todd v. State, 472 So.2d 707, 714
(Ala.Cr.App. 1985). In the present case, conflicting evidence was presented to the trier of fact. From the evidence, it was reasonable to conclude that the appellant murdered the victim. Circumstantial evidence affords satisfactory proof of the corpus delicti in a murder case where the evidence excludes every reasonable hypothesis except that of guilt. Barnes v.State, 429 So.2d 1114, 1119 (Ala.Cr.App. 1982). The State proved *Page 1124 
the corpus delicti. However, the appellant also argues that the State failed to establish the corpus delicti prior to the introduction of his alleged confession. This would not necessarily constitute reversible error. Even if the appellant's confession was inadmissible when offered, because the corpus delicti had not yet been proven, any error was cured by the subsequent proof of the corpus delicti.Corbin v. State, 412 So.2d 299, 301 (Ala.Cr.App. 1982). Therefore, even if we were to find that the State did not prove the corpus delicti prior to admission of his confessions, the subsequent proof of the corpus delicti would defeat a demand for reversal. We find, however, that the record in the present case reflects that the corpus delicti was proven before the appellant's alleged confessions were admitted.
In the case at bar, the evidence on the appellant's alleged confessions was conflicting. The victim's mother and brother and Detective Gaut testified that the appellant admitted killing the victim. The appellant denied the statements at trial.
Where the evidence presents a question of fact for the jury, and such evidence, if believed, is sufficient to sustain a conviction, the denial of a motion for acquittal or the denial of a motion for new trial do not constitute error. Duncan v.State, 436 So.2d 883, 904 (Ala.Cr.App. 1983), cert. denied,464 U.S. 1047, 104 S.Ct. 720, 79 L.Ed.2d 182 (1984).
Furthermore, a verdict of guilty will not be set aside on the ground of insufficiency of the evidence, unless, allowing all reasonable presumptions for its correctness, the preponderance of the evidence against the verdict is so decided as to clearly convince this court that it was wrong and unjust. Scanland, supra, at 1185.
In the present case, the jury heard all the evidence and chose not to believe the appellant's version of the incident, i.e., his denial of the killing. We have reviewed the record and find that the State did prove a prima facie case of murder and that there was sufficient evidence to support the guilty verdict.
Therefore, this cause is due to be, and it is hereby, affirmed.
AFFIRMED.
All the Judges concur.