On Application for Rehearing

COBB, Judge.
The opinion of January 28, 2005, is withdrawn and the following opinion is substituted therefor.
On February 25, 2004, Derrick Wayne Jones was convicted of stalking, a violation of § 13A-6-90(a), Ala.Code 1975. On April 13, 2004, the trial court sentenced Jones to 10 years in prison. On that same date, Jones filed a motion for a new trial, which the trial court denied on April 20, 2004. This appeal followed.
The evidence adduced at trial indicated the following: The victim, K.T., was 16 years old when she and Jones began dating. Jones was between 19 and 20 years old. K.T. became pregnant by Jones. Jones and his family encouraged K.T. to have an abortion, but she refused and said she would take care of the baby herself. The child was born on August 2, 1999. Jones became physically abusive toward K.T. during her pregnancy, telling her that he “was going to make [her] lose the baby.” (R. 23.) Nonetheless, K.T. decided to live with Jones, and the two moved into her grandmother’s house to await the arrival of their baby.
On March 31, 2000, approximately six to seven months after K.T. had the baby, a boy, she and Jones had an argument. During the argument, Jones took the keys to KT.’s automobile, intending to leave her with no transportation. As Jones started to drive away in his truck, K.T. jumped in the bed of the truck and began “beating on the cab of the truck.” (R. 25.) Jones continued to drive at “about fifty” miles per hour (R. 27), swerving and “trying to sling [her] out.” (R. 25.) K.T. was eventually thrown out of the truck, and her “head hit the concrete.” (R. 27.) K.T. was badly skinned up as a result of the fall from the truck. Jones took K.T. to her mother’s house. He sat her in a kitchen chair, told her mother that he thought he had run over her, and left. KT.’s mother took K.T. to the hospital, where she stayed for 24 hours.
*80 After K.T. was released from the hospital, she, Jones, and the baby moved in with Jones’s mother. Over the next few months, according to K.T., her relationship with Jones “gradually got worse and worse.” (R. 30.) On June 30, 2000, K.T. and Jones were house-sitting for a member of KT.’s family when an argument ensued. K.T. told Jones that she was leaving him, went into the house, and locked the door, leaving Jones outside. Jones broke down the door and, in the ensuing melee, the child was injured. In September 2000, K.T. moved in with her mother and the child.[1]
On September 19, 2000, K.T. was preparing to leave her mother’s house. Jones had parked his truck in the backyard of K.T.’s mother’s house, but K.T. did not see him. Johnny T., who was not yet KT.’s husband, arrived at the mother’s house. Johnny and his mother had come to pick up K.T. Jones came “out from behind the bushes around [the] house.” (R. 34.) Jones ran to Johnny’s car to ask Johnny what he was doing. Johnny told him that he was there to pick up K.T. K.T. ran to the car to see what was going on. Jones turned and “slapped [her] to the ground.” (R. 36.) K.T. was knocked unconscious; when K.T. awoke she found Johnny and Jones were fighting. There was no telephone at the residence. Johnny, his mother, and K.T. left the scene in Johnny’s automobile and went to Johnny’s mother’s house to telephone the police. Jones was convicted of criminal trespass and domestic violence as a result of the September 19, 2000, incident.
On March 21, 2002, K.T.’s mother found some strange objects in her mailbox, in-eluding a Father’s Day card that had been given to Jones, a postcard to Jones with a note from the child, and a photograph of Jones, K.T., and the baby; Jones’s face was scratched through in the photograph and written on the back was “ ‘I’ll always be watching.’ ” (R. 43.) The postcard had also been defaced; the words “Tuesday,” “Derrick,” and “Papa” were crossed out and the word “God” was circled. That evening, K.T. left the house to visit a friend who had recently had a baby. At this time, K.T. and Johnny were married and had a child, and Johnny stayed home to babysit. As K.T. was crossing a highway in her vehicle, she saw Jones’s car coming toward her. Jones “turned in behind [her].” (R. 46.) K.T. “drove through Pinsonf,] trying to lose him,” but she could not. (R. 46.) Jones followed her in an “extremely close” fashion. (R. 47.) Jones then rammed into the back of KT.’s vehicle until he ran her vehicle off the road. K.T. got out of the car and tried to run away. Jones caught her and “hit [her] over the head with something.” (R. 48.) K.T. was rendered unconscious. When she awoke, she “had marks all around [her] neck, all over [her] head.” (R. 48.) She ran to a nearby mobile home, and the woman living there telephoned KT.’s mother, who came to get her. Jones was prosecuted for the incident and was convicted of third-degree domestic violence.
On July 13, 2003, K.T., Johnny, and a Mend named Jay had just dropped off KT.’s children at KT.’s mother’s house. The three were going fishing. Jay was driving his own truck. The three drove past Jones’s house.[2] Jones saw them pass his house and followed them in his truck. *81 The three were stopped at a stop sign at a very busy intersection when Jones “rammed the back of the truck” in which the three were riding. It was “a big impact.” (R. 53.) K.T. recognized Jones as the driver of the truck. Jones put the truck in reverse and retreated approximately five feet. His truck was smoking. Jones drove away. The police were telephoned, and the events of that day formed the basis of the stalking case, for which an indictment was returned against Jones on December 5, 2003.
Several months later, on December 24, 2003, K.T., her mother, Johnny, and her and Johnny’s two-year-old daughter were going shopping at the Dollar General discount store for candy and toys to put in Christmas stockings. Johnny decided to stay in the truck with their daughter who was sleeping, while K.T. and her mother went into the store. As K.T. was getting out of the truck, she saw Jones. K.T. told her mother to stay in the truck until Jones was gone. On his way to his truck, Jones “stopped at the side of [Johnny’s] truck and just stared at [K.T. and her family].” (R. 59.) Jones got into his truck and left the parking lot. K.T. and her mother then went into the store. While the two women were shopping, Jones returned in his truck, pulled up behind Johnny’s truck in the parking lot, “spun his tires” (R. 96), and flashed his headlights. Johnny ran out into the middle of the parking lot to lead Jones away from the truck where his daughter was sleeping. Jones “did a little doughnut and took off back around the building and left.” (R. 97.) Johnny retrieved his daughter and took her into the store so she could stay with the two women irntil Johnny could make sure that Jones had left the parking lot. Johnny returned to the parking lot, and Jones was no longer in the area.
Jones raises three arguments on appeal. We address each in turn. .
I.
First, Jones argues that the trial court erred by allowing detailed testimony regarding the basis of Jones’s prior convictions when he stipulated to the fact that he had, in fact, been convicted of those crimes. The gist of this argument is that the trial court should have been satisfied to allow proof of his convictions in the form of certified copies and should not have allowed testimony regarding the details underlying those prior convictions. Jones refers to an alleged double jeopardy violation and, in some parts of his argument, admits that the certified copies of the prior convictions were admissible to prove the case of stalking against him, but he maintains that the factual bases of the prior convictions were inadmissible under Rule 404(b), Ala. R. Evid.
Jones objected as follows to the admission at trial of his prior convictions:
“[The prosecutor] gave me the letter [expressing his intent to use evidence of Jones’s prior convictions] yesterday. I had the opportunity to look at it. And I’m objecting to the district attorney being able to bring this information into the facts of the case here. We’re willing to stipulate as to the convictions.”
“Right. Okay. Well, sticking back to these incident reports and what the State has to prove, Judge, the repeated nature of what has been laid out here, these incident reports, it is my opinion that if all of these incident reports are introduced, you’re going to have public intoxication confused with — and prejudicial as comes under [Rule] 403 [Ala. R. Evid.], that it should not be used in this case.
*82 “So what you-have here is you have five incident reports, of which one is the one we’re here on, two on the same occasion and involved an incident report filed by the mother, and the other filed by the victim, but they relate to the same facts.
[[Image here]]
“Right. So at this point, in what I’m talking about, you have one incident other than the one that is charged here. They you’ve got the fourth incident report here, which was actually public intoxication. And then you’ve got the fifth incident report, which became domestic violence third. So you’ve got two domestic violence and the current charge of stalking before the Court.”
(R. 3, 7-8.) The trial court overruled the objection. Later, during the same proceeding, Jones again objected.
“[Defense counsel]: Judge, I would like to again bring up a motion whereby the elements or the actual facts of the prior conviction not be allowed into evidence because I believe it, in addition to being prejudicial, would amount to double jeopardy, as we are stipulating to the fact that he has been convicted twice before on charges of either harassment or domestic violence. And the statute just calls for a repeated [sic]. If the facts are gone into—
“THE COURT: Well, let me stop you. I think you’re arguing under [Ala. R. Evid.] 609. And from what I understand from [the prosecutor] yesterday, he’s not offering this as 609 evidence or as [Ala. R. Evid.] 404(b) evidence. He’s offering it as evidence under the statute of stalking to prove a course of conduct; is that correct?
“[Prosecutor]: Judge, that’s correct.
“[Defense counsel]: Well, the stipulation and the convictions speaks for itself. And to go into these facts again would be double jeopardy in that in addition to the facts that bring us here specifically on the stalking case, the most recent facts for which he has not been convicted but which comprise or meet that element of the repeated, you had to have the prior convictions. And it’s my feeling that it’s just enough to say he has two convictions of which these convictions are for domestic violence and harassment, and that beats it.
“THE COURT: Okay. Your objection is noted and overruled.”
(R. 12-13.) In his motion for a new trial, Jones complained that the trial court allowed the facts underlying the prior convictions to be admitted, rather than simply accepting his stipulation to the prior convictions.
At trial, there was no mention of Rule 404(b), Ala. R. Evid. Apparently, Jones was complaining because the incident reports were confusing, at least the public-intoxication incident report, and because he did not want the details of the prior conviction admitted. A specific objection waives all other grounds not specified, see Gray v. State, 597 So.2d 238, 239 (Ala.Crim.App.1992). Therefore, we do not at this point address Jones’s arguments regarding Rule 404(b).[3]
Jones does not pursue his argument about the public-intoxication incident report and any possible confusion. Therefore, we do not address that argument.
As for his argument regarding the trial court’s decision to allow the State to present evidence of the facts underlying *83 Jones’s prior convictions, Jones does not cite any legal authority that would dictate that the trial court should have admitted only the certified copies of the prior convictions once Jones had stipulated to the convictions. We know of no rule that requires that the State be allowed to present only skeletal evidence of the events leading up to a stalking prosecution. In fact, this Court has allowed evidence of a defendant’s prior bad acts to establish a pattern of conduct in a stalking case, and that evidence was not limited to certified copies of the prior convictions, or even incident reports. See, e.g., Mims v. State, 816 So.2d 509 (Ala.Crim.App.2001). Therefore, this argument is completely without merit.
Moreover, the Court has held that, in order to show a course of conduct in a stalking case, the admission of a defendant’s prior convictions for bad acts concerning the stalking victim does not constitute a violation of a defendant’s protection against double jeopardy. See Mims, 816 So.2d at 515-16. Therefore, this portion of Jones’s argument is also without merit.
II.
Second, Jones argues that the trial court erred by allowing the State to introduce evidence of the December 24, 2003, incident in the Dollar General discount store parking lot. Specifically, he contends:
“Proper procedure to have allowed admission of the testimony of alleged actions by Jones after December 5, 2003[,] would have been for the indictment dated December 5, 2003[,] to have been dismissed and Jones reindicted to include activities that occurred on or about ChristmasD 2003. The failure on the part of the State to follow this procedure rendered any testimony regarding allegations after December 5, 2003[,] to have been inadmissible as to the indictment for which Jones went to trial.”
(Jones’s brief, p. 40.) During KT.’s testimony, Jones objected to her testimony regarding the December 24, 2003, incident in the Dollar General parking lot because, he argued, that incident “[went] past the relevant date with which this—from the time of which this indictment.” (R. 56.) The trial court overruled his objection. Jones objected on the same grounds during Johnny’s testimony and received the same adverse ruling. At the end of the trial court’s charge to the jury, Jones moved for a mistrial on the same grounds; the trial court denied the motion.
Assuming without deciding that Jones’s argument pertains to the relevance of the testimony regarding the December 2003 incident and assuming without deciding that his argument is preserved for review, we hold it to be without merit. Section 13A-6-90(a), Ala.Code 1975, defines the crime of stalking, a Class C felony, as follows: “A person who intentionally and repeatedly follows or harasses another person and who makes a credible threat, either expressed or implied, with the intent to place that person in reasonable fear of death or serious bodily harm is guilty of the crime of stalking.”
“In order to prove a prima facie case of stalking, the State must show three elements. First, the State must prove that the accused ‘intentionally and repeatedly follow[ed] or harassed] another person.’ Second, the accused must have made a ‘credible threat.’ Finally, the accused must have intended to place the victim in reasonable fear of death or serious bodily injury. See § 13A-6-90, Code of Alabama 1975.”
Hayes v. State, 717 So.2d 30, 33 (Ala.Crim.App.1997). As the State points out, “ ‘ “If an accused is charged with a crime that requires a prerequisite intent, ... then *84 prior or subsequent criminal acts are admissible to establish that he had the necessary intent when he committed the instant crime.” ’ Hinton v. State, 632 So.2d 1345, 1348 (Ala.Cr.App.1993), quoting Jones v. State, 439 So.2d 1308, 1310 (Ala.Cr.App.1983) (emphasis in Hinton omitted).” Gamble v. State, 791 So.2d 409, 441 (Ala.Crim.App.2000). Jones’s subsequent bad act consisted of staring at K.T. and her family in a threatening manner and threatening her family with his vehicle — which he had previously used to ram a vehicle in which K.T. was a passenger and an act that formed the basis of the stalking charge against him. Additionally, as Jones points out in Issue III in his brief, without proof of his intent to place the victim in reasonable fear of death or serious bodily injury, Jones was guilty only of reckless endangerment or reckless driving. Therefore, evidence of Jones’s subsequent bad act was admissible to show his intent to place K.T. in reasonable fear of death or serious bodily injury..
Moreover, the subsequent bad act was evidence of Jones’s repetitive pattern of bad behavior toward K.T. See, e.g., Culbreath v. State, 667 So.2d 156 (Ala.Crim.App.1995) (holding that accused’s prior bad acts in a stalking case were necessarily admissible to establish a repetitive pattern of bad behavior towards the victim), abrogated on another ground, Hayes v. State, 717 So.2d 30 (Ala.Crim.App.1997). Jones’s conduct during the incident subsequent to his indictment for stalking consisted of the very type of conduct the anti-stalking statute is intended to prohibit. There is no need to differentiate between a bad act committed before the indictment issued and a bad act committed after it has issued; both acts are part of the repetitive pattern of behavior that defines the very act of stalking. Therefore, this argument is without merit.
III.
Finally, Jones argues that the State failed to prove all of the elements of stalking. At trial, Jones argued in his motion for a judgment of acquittal that the State had proved, at best, a case of reckless driving or reckless endangerment. The trial court denied the motion. (R. 129.)
On appeal, Jones argues that he was guilty only of reckless driving; that he did not intentionally engage in stalking behavior, but that he hit the truck in which K.T., Johnny, and their friend were riding only accidentally as a result of anger — without knowing who was in the truck; and that KT.’s testimony established that she did not fear Jones because she continued to five in the same neighborhood as Jones.
 As to the first two arguments, Jones asks this Court to believe his testimony over the testimony of K.T., Johnny, and all the other State’s witnesses, thereby implicating the weight of the evidence, as he did in his motion for a new trial. That is not the function of this Court.
“ ‘We have repeatedly held that it is not the province of this court to reweigh the evidence presented at trial. E.g., Franklin v. State, 405 So.2d 963, 964 (Ala.Cr.App.), cert. denied, 405 So.2d 966 (Ala.1981); Crumpton v. State, 402 So.2d 1081, 1085 (Ala.Cr.App.), cert. denied, 402 So.2d 1088 (Ala.1981); Nobis v. State, 401 So.2d 191, 198 (Ala.Cr.App.), cert. denied, 401 So.2d 204 (Ala.1981). ‘“[T]he credibility of witnesses and the weight or probative force of testimony is for the jury to judge . and determine.’ ” Harris v. State, 513 So.2d 79, 81 (Ala.Cr.App.1987) (quoting Byrd v. State, 24 Ala.App. 451, 136 So. 431 (1931)).’
“... See Smith v. State, 604 So.2d 434 (Ala.Cr.App.1992); Pearson v. State, 601 *85 So.2d 1119 (Ala.Cr.App.1992); Curry v. State, 601 So.2d 157 (Ala.Cr.App.1992).”
Zumbado v. State, 615 So.2d 1223,1240-41 (Ala.Crim.App.1993) (quoting Johnson v. State, 555 So.2d 818, 819-20 (Ala.Crim.App.1989)). We will not second-guess the jury’s determinations regarding the credibility of the witnesses and the weight of the evidence. Therefore, this argument is without merit.
As for Jones’s assertion that K.T.’s own testimony established that she did riot fear him, we note that the State had to prove that “the accused must have intended to place the victim in reasonable fear of death or serious bodily injury.” Hayes v. State, 717 So.2d at 33. This Court has specifically refused to adopt the position that the State must prove that the victim was actually in fear of death or serious bodily injury. Id. Therefore, the State’s evidence that Jones intended to place K.T. in fear for her life and safety — as was evidenced by Jones’s constant and relentless assaults on K.T. and her family — was sufficient to establish a case of stalking.
For the reasons stated above, the judgment of the trial court is. affirmed.
APPLICATION FOR REHEARING OVERRULED; OPINION OF JANUARY 28, 2005, WITHDRAWN; OPINION SUBSTITUTED; AFFIRMED.
McMILLAN, P.J., and BASCHAB, SHAW, and WISE, JJ„ concur.

. There was an investigation to determine the cause of the baby's injury. K.T. testified that she “had to wait on the courts to let me move back in with my mother because I couldn’t live with my son because they — me and [Jones] were both supposedly under suspicion.” (R. 32.)

. Apparently, Jones and K.T. lived in close proximity to one another.

. However, we do address Jones’s Rule 404(b) argument to some extent in Part II of this opinion.