[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 511 
The appellant, Tommy Jordan Mims, was indicted on August 12, 1999, in a three-count indictment: Count 1 charged burglary in the first degree, a violation of § 13A-7-5, Ala. Code 1975; Count 2 charged aggravated stalking, a violation of §§ 13A-6-90 and -91; and Count 3 charged intimidation of a witness, a violation of § 13A-10-123. On April 7, 2000, a jury found him guilty as charged as to Counts 1 and 2 and not guilty as to Count 3. On June 22, 2000, the trial court sentenced the appellant to 15 years' imprisonment on each count and ordered that the sentences be served consecutively. The trial court split each sentence so that the appellant would serve 9 months in each case and would then be placed on supervised probation for 10 years. It also ordered him to pay $50 to the victims compensation fund and $3,448 in restitution. In its sentencing order, the trial court set out in considerable detail the conditions of probation, which included a payment schedule for the restitution and instructions that the appellant abide by all restraining orders that had been issued by the family court division of the Tuscaloosa Circuit Court. The appellant appeals, raising four issues.
 I.
The appellant first contends that the trial court erred in denying his motions for a judgment of acquittal made at the conclusion of the State's case-in-chief and at the close of all of the evidence and also his motion for a new trial, challenging the sufficiency of the State's prima facie case and the sufficiency of the evidence to support a conviction for burglary in the first degree.
Section 13A-7-5(a)(2), Ala. Code 1975, defines burglary in the first degree as follows:
 "A person commits the crime of burglary in the first degree if he knowingly and unlawfully enters or remains unlawfully in a dwelling with intent to commit a crime therein, and, if, in effecting entry or while in dwelling or in immediate flight therefrom, he or another participant in the crime:
". . . .
 "(2) Causes physical injury to any person who is not a participant in the crime. . . ."
Physical injury is defined in § 13A-1-2(8) as "[i]mpairment of physical condition or substantial pain."
The State's evidence indicated that Carolyn Louise White and the appellant began living together in 1993 in a common-law marriage relationship; that she began having difficulties with the appellant when she became pregnant; and that, because of the appellant's abusive and threatening conduct toward her, she left him about six weeks after the birth of their son. The threats, abuse, and harassment by the appellant continued after their separation, and they obtained a divorce May 16, 1996. The divorce judgment included an order restraining the appellant from harassing, threatening, or assaulting White or from going on her premises or interfering with *Page 512 
her in any way. The restraining order had little effect upon the appellant; he continued his harassing and threatening conduct and, on a number of occasions, broke into White's residence.
The basis for the charge of burglary in the first degree is a July 14, 1998, incident at White's residence. At approximately 6:00 a.m. on that date, the appellant went to White's residence and told her that he wanted to come inside and talk. She stepped out on the porch and told him that he could not come in. The appellant pushed her back into the residence and struck her in the head repeatedly. She managed to get back out on the porch, and the appellant followed her and struck her again, knocked her down, and kicked her in her legs and stomach. The appellant's assault ended when a neighbor, wielding a hammer, came to White's aid. White suffered a bruised ear, scratches on her arms, a swollen face, and a knot on her head. She sought medical treatment.
In deciding whether there is sufficient evidence to support a jury's verdict and the judgment of the trial court based on that verdict, this court must review the evidence in the light most favorable to the prosecution. Faircloth v. State, 471 So.2d 485 (Ala.Crim.App. 1984),aff'd, 471 So.2d 493 (Ala. 1985); Cumbo v. State, 368 So.2d 871
(Ala.Crim.App. 1978), cert. denied, 368 So.2d 877 (Ala. 1979). Conflicting evidence presents a jury question not subject to review on appeal, provided the State's evidence establishes a prima facie case. Gunnv. State, 387 So.2d 280 (Ala.Crim.App.), cert. denied, 387 So.2d 283
(Ala. 1980). We review a trial court's denial of a motion for a judgment of acquittal by determining whether there existed legal evidence before the jury at the time the motion was made from which the jury, by fair inference, could have found the defendant guilty beyond a reasonable doubt. Willis v. State, 447 So.2d 199 (Ala.Crim.App. 1983).
We have examined the evidence presented by the State in the instant case, and, in so doing, we have applied the above standards of review. The evidence presented by the State, along with the reasonable and fair inferences that could be drawn from it, was sufficient to establish a prima facie case of burglary in the first degree and sufficient for the jury to find the appellant guilty of first-degree burglary beyond a reasonable doubt.
The appellant had no legal right to enter White's dwelling, and he knew it. Under the circumstances, his entry was clearly unlawful. He and White were divorced, and he was under a restraining order prohibiting him from contacting her and going on her premises. In addition, she personally denied him permission to enter her dwelling. That the appellant had the intent to assault White when he pushed her into the residence and began beating her can reasonably be inferred from the acts themselves and from the testimony about the incident. The physical injuries suffered by White were of such a nature and degree as to meet the requirements of §13A-7-5(a)(2). See South v. City of Mountain Brook, 688 So.2d 292
(Ala.Crim.App. 1996); Eubanks v. State, 611 So.2d 448 (Ala.Crim.App. 1992).
Accordingly, the appellant's motions for a judgment of acquittal based upon assertions that the State failed to present a prima facie case and failed to present sufficient evidence to support the jury's verdict and the judgment of the trial court were properly denied. The appellant's motion for a new trial, insofar as it alleges the insufficiency of, and lack of weight of, evidence was also properly denied. *Page 513 
 II.
Secondly, the appellant contends that the trial court erred in denying his motions for a judgment of acquittal made at the conclusion of the State's case-in-chief and at the close of all the evidence and his motion for a new trial, challenging the sufficiency of the State's prima facie case and sufficiency of the evidence to support a conviction for aggravated stalking.
Section 13A-6-90(a) defines the crime of stalking, a Class C felony, as follows: "A person who intentionally and repeatedly follows or harasses another person and who makes a credible threat, either expressed or implied, with the intent to place that person in reasonable fear of death or serious bodily harm is guilty of the crime of stalking." Section13A-6-91(a) defines the crime of aggravated stalking, a Class B felony, as follows: "A person who violates the provisions of Section 13A-6-90(a) and whose conduct in doing so also violates any court order or injunction is guilty of the crime of aggravated stalking."
 "In order to prove a prima facie case of stalking, the State must show three elements. First, the State must prove that the accused `intentionally and repeatedly follow[ed] or harass[ed] another person.' Second, the accused must have made a `credible threat.' Finally, the accused must have intended to place the victim in reasonable fear of death or serious bodily injury. See § 13A-6-90, Code of Alabama 1975."
Hayes v. State, 717 So.2d 30, 33 (Ala.Crim.App. 1997) (emphasis omitted).
In order to prove the first element of the offense, i.e., that the accused intentionally and repeatedly followed or harassed another person, the State must show that the accused either followed the victim on more than one occasion or that the accused harassed the victim on more than one occasion. Hayes v. State, 717 So.2d at 33; State v. Randall,669 So.2d 223, 227 (Ala.Crim.App. 1995). "Harasses," as that word is used in the stalking statutes, is defined in § 13A-6-92(c), as follows:
 "Engages in an intentional course of conduct directed at a specified person which alarms or annoys that person, or interferes with the freedom of movement of that person, and which serves no legitimate purpose. The course of conduct must be such as would cause a reasonable person to suffer substantial emotional distress, and must actually cause substantial emotional distress. Constitutionally protected conduct is not included within the definition of this term."
"Credible threat," as that phrase is used in the stalking statutes, is defined in § 13A-6-92(b), as follows:
 "A threat, expressed or implied, made with the intent and the apparent ability to carry out the threat so as to cause the person who is the target of the threat to fear for his or her safety or the safety of a family member and to cause reasonable mental anxiety, anguish, or fear."
"Course of conduct" is defined in § 13A-6-92(a), as follows: "A pattern of conduct composed of a series of acts over a period of time which evidences a continuity of purpose."
The State's evidence indicated that the appellant engaged in almost continuous harassing and threatening conduct against White for nearly four years. The evidence showed that White left the appellant, who was then her common-law husband, in 1995, shortly after their son was born, and that she subsequently obtained a divorce on May 16, 1996. The evidence further indicated that, from the time that White left the appellant in 1995 to December *Page 514 
1999, the appellant engaged in a continuous campaign of harassment, threats, intimidation, and assaults against her. She testified that, on more than 20 occasions, she came home to find that the appellant had broken into her home; that he was waiting for her and would not leave; and that she was forced to leave for her protection. The restraining order, which was part of the divorce judgment, had little effect on the appellant. He violated it regularly and with impunity. White related several instances in which the appellant broke into her home, assaulted her, and threatened to kill her. On these occasions, it was necessary for her to call the police, and on one occasion, it took four police officers to restrain the appellant. On another occasion, the police had to take the child from the appellant when it appeared that he was using the child as a shield. White spent six weeks in a shelter for abused women in an effort to avoid the appellant. He pursued her where she worked and embarrassed her in the presence of her employer. He threatened to cause her serious harm if she pursued charges against him. She found it necessary to place her young son in counseling because of problems he developed as a result of the appellant's actions. She testified that the only time that she was free from harassment and fear during this period was when the appellant was in jail.
The evidence presented by the State indicated that the appellant intentionally and repeatedly followed and harassed White; that he made credible threats with the apparent ability to carry them out; and that the threats were obviously made with the intent to place her in fear of death or serious bodily harm. The evidence showed that the appellant's actions caused White to suffer from mental anxiety, anguish, and fear of death or serious bodily harm.
We have examined the evidence presented by the State to prove the offense of aggravated stalking, and in so doing, have applied the standards of review set out in Part I above. The evidence presented by the State, along with the reasonable and fair inferences that can be drawn from it, was sufficient to establish a prima facie case of aggravated stalking and also sufficient for the jury to find the appellant guilty of that offense beyond a reasonable doubt. The State's evidence presented a classic case of aggravated stalking.
The appellant's motions for a judgment of acquittal based on the assertions that the State failed to present a prima facie case of aggravated stalking and failed to present sufficient evidence to support the jury's verdict and judgment of the trial court were properly denied. The trial court also properly denied the appellant's motion for a new trial in so far as it was based on allegations of the insufficiency of, and weight of, the evidence.
 III.
Thirdly, the appellant contends that the trial court erred in denying his motion for a new trial or, in the alternative, an arrest of judgment based on the allegation that a juror did not disclose, during the jury selection process, that he and the appellant had had a prior physical altercation.
The record shows that, early on the second day of the trial, immediately after the opening statements, a juror, C.G., approached the bench and explained that the appellant looked familiar to him and that he may have met the appellant on a previous occasion at the site of an installation of a swimming pool in Cottondale. C.G. told the court that the appellant might be a brother of Ray Hodo, a person he knew. A brief hearing was held, and the appellant stated that Hodo was an old acquaintance *Page 515 
of his, but was not his brother and that he had never worked on a swimming pool. C.G. stated that his contact with the person he thought might have been the appellant was brief, that he had no dealings with this person, that the contact would not influence him in his approach to the case, and that he could be neutral. Neither party questioned C.G., and the trial court allowed him to continue serving as a juror.
After sentencing, the appellant filed a motion for a new trial, alleging, inter alia, that he had learned that one of the jurors in his case, C.G., had a "prior history of physical altercations with the Defendant" and had "failed to disclose this information during voir dire." (C.R. 80.) A hearing was held on the motion. The appellant testified that, shortly after his trial, he remembered that C.G. was a drug dealer; that C.G.'s street name was "Kilo" or "Kee"; and that six or seven years before his trial, he and Hodo had attacked and beaten C.G. in revenge for an altercation between C.G. and Hodo a week earlier. (R. 584-93.) Hodo gave substantially the same testimony, except he did not identify C.G. as the person involved in the altercations. C.G. was not present when Hodo testified, and Hodo testified only that he had the altercations with an individual named "Kee" or "Kilo." C.G. was not called as a witness by either party at the hearing. The trial court continued the hearing to a later date and called C.G. to testify as the court's witness. C.G. again testified that he thought he had briefly talked with the appellant once, for about five minutes, about three years before the appellant's trial, while the appellant was working on the installation of a swimming pool. He testified that he had known Hodo for several years, but that he had never had a fight or altercation with either the appellant or Hodo and that he had never had any cross words with either man. He denied ever using either name "Kee" or "Kilo" or being called by either name. He further testified that, during the time he served as a juror, he had no adverse reaction or ill will toward the appellant. Subsequently, the trial court denied the appellant's motion for a new trial, and included detailed findings of fact in its order.
A trial court's decision to deny a motion for a new trial will not be disturbed on appeal unless there is a clear showing of abuse of discretion, and this court will indulge every reasonable presumption in favor of the correctness of the trial court's ruling. Mims v. State,591 So.2d 120 (Ala.Crim.App. 1991); Nichols v. State, 500 So.2d 92
(Ala.Crim.App. 1986). Findings of fact by the trial court are presumed to be correct and will not be overturned on appeal unless they are clearly erroneous, and a trial court's decisions concerning the credibility of witnesses are reviewed under the abuse of discretion standard. Howard v.State, 648 So.2d 625 (Ala.Crim.App. 1994). Assessing the credibility of evidence presented at a new trial hearing falls to the trial court because it is in the best position to evaluate the evidence in light of all that has gone before. Perry v. State, 455 So.2d 999 (Ala.Crim.App. 1984).
Here, it was the duty of the trial court to weigh the testimony and to determine the credibility of the witnesses. The conflicts in the testimony were for the court to resolve. It is apparent from the trial court's order and findings that it believed C.G. rather than the appellant. Under the facts presented, it was for the trial court to decide. We find that the trial court did not abuse its discretion in denying the motion for a new trial based on the grounds raised by the appellant. Its decision is amply supported by the evidence in the record.
 IV.
Last, the appellant contends that the trial court erred in denying his motion *Page 516 
to dismiss the aggravated-stalking count of the indictment because, he says, his prosecution on this count violated his constitutional protection against double jeopardy. He apparently contends that he was subjected to double jeopardy because the same facts that were supposedly used to prosecute him for prior misdemeanors for harassing White or trespassing upon her premises were subsequently used to establish an element of the stalking charge, i.e., that the accused had "intentionally and repeatedly followed or harassed" the victim.
The appellant did not clearly and with specificity present this double jeopardy issue to the trial court in his motion to dismiss. He alleged no facts or argument in his motion to support his contention. Rather, the trial court was presented with a bare, conclusory allegation. The ensuing trial offered no further clarification or specificity in regard to this claim of a violation of the principle of double jeopardy. It can be surmised from the testimony of the witnesses only that, during the approximately four years of the appellant's harassment, White obtained warrants against the appellant on some occasions and that these complaints apparently resulted in two or three misdemeanor convictions, for which the appellant served time in jail. However, no evidence was offered to prove any specific prior prosecution or conviction, and no objections were made to that vague testimony that alluded to such prosecutions or convictions. Based on the record before this court, we are unwilling to hold that the trial court abused its discretion in denying the appellant's motion. The appellant simply failed to allege or present sufficient, specific facts to support the dismissal of the aggravated-stalking count.
We further note that other jurisdictions have treated in depth the issue whether a defendant's protection against double jeopardy prohibits the use of evidence of prior harassment for which the defendant has already been prosecuted to establish a pattern of conduct required to prove a subsequent stalking charge. See, e.g., Daker v. State, [No.248 Ga. App. 657, 548 S.E.2d 354 (2001), and cases cited therein. The Alabama rule was expressed in Culbreath v. State, 667 So.2d 156
(Ala.Crim.App. 1995), abrogated on another ground, Hayes v. State,717 So.2d 30 (Ala.Crim.App. 1997), albeit without much discussion.[1]
The court in Culbreath held that a defendant's prior conviction for harassing his former wife was correctly received into evidence to show the defendant's "course of conduct" of repeatedly following or harassing her and that the court's admission of this evidence did not violate the defendant's protection against double jeopardy. Cf. Hayes v. State. We find that the testimony of the appellant's prior bad acts — even those for which he might have already been prosecuted — was properly admitted and was necessary to establish a course of conduct by the appellant. Finally, we note that the prosecution presented far more evidence of a course of conduct establishing the appellant's following and harassing White than the evidence the appellant complains of here.
Based on the foregoing, the appellant's convictions and sentences are due to be affirmed.
The foregoing opinion was prepared by Retired Appellate Judge John Patterson while serving on active duty status as a *Page 517 
judge of this court under the provisions of § 12-18-10(e).
AFFIRMED.
McMillan, P.J., and Cobb, Baschab, Shaw, and Wise, JJ., concur.
[1] The court analyzed the double jeopardy issue, not in terms of whether the defendant could be prosecuted or punished for the same conduct, but whether the evidence of the acts underlying the prior convictions was admissible — an entirely separate question.