# IN THE SUPREME COURT OF IOWA

No. 11–0770

Filed March 8, 2013

**STATE OF IOWA,**

Appellant,

vs.

**CHRISTOPHER RAYMOND LINDELL,**

Appellee.

Appeal from the Iowa District Court for Scott County, Thomas G. Reidel (motion for bill of particulars) and John D. Telleen (motion to dismiss), Judges.

The State appeals from the district court's grant of a motion for a bill of particulars and a motion to dismiss. **REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.**

Thomas J. Miller, Attorney General, Darrel L. Mullins, Assistant Attorney General, Michael J. Walton, County Attorney, and Jay Sommers, Assistant County Attorney, for appellant.

Mark C. Smith, State Appellate Defender, and Martha J. Lucey, Assistant Appellate Defender, for appellee.

**ZAGER, Justice**.

This appeal centers on the question of whether a previous conviction for stalking under Iowa Code section 708.11 can be used to establish a course of conduct for a subsequent stalking violation. We find the legislature intended that for purposes of determining whether an offense is a second or subsequent offense of stalking, prior violations of the stalking statute can be considered as evidence of the course of conduct necessary for a prosecution for stalking as a second or subsequent offense. We further find that the rule of lenity does not apply, as Lindell had sufficient notice that his conduct could give rise to additional criminal liability. Therefore, we reverse the district court and remand for further proceedings.

## I. Background Facts and Proceedings.

The facts in this case are not in dispute. Christopher Raymond Lindell and A.C. were involved in a romantic relationship. In May 2010, A.C. attempted to break all ties with Lindell. Based on events occurring in April 2010, A.C. obtained an order of protection against Lindell in Polk County, Iowa, on April 26, 2010. At some point, A.C. moved to Scott County. However, in violation of the protective order, Lindell continued to make contact with A.C. These contacts included leaving a handwritten note and flowers on her car in June 2010; hang-up calls on July 4, 6, 9, and 11, 2010; a personal contact on July 4, 2010; and being at A.C.'s residence and damaging her automobile tires and other property on July 11, 2010. As a result of these contacts, A.C. obtained an additional order of protection in Scott County on July 11, 2010. A final incident occurred on August 23, 2010, when Lindell contacted A.C. twice by telephone. All of these incidents form the basis of the prior trial

information charging Lindell with stalking, criminal mischief, and other charges.

On December 15, 2010, Lindell pled guilty to stalking, first offense, with protective order, in violation of Iowa Code section 708.11, and fourth-degree criminal mischief, in violation of Iowa Code section 716.1 (2009), for crimes committed against A.C. On January 20, 2011, Lindell received a deferred judgment on the stalking charge.[1] The court also continued the no-contact order for the protection of A.C.

On January 25, 2011, Lindell parked his vehicle in an area where he could look directly into the office where A.C. was working. When A.C. made eye contact with Lindell, he drove away. She immediately reported this contact to law enforcement. During the investigation, Lindell admitted he had been at that location but claimed he had a legitimate reason for being there.

In response to this incident, Christopher Lindell was charged by amended trial information with stalking, second offense, or, alternatively, stalking in violation of a protective order, in violation of Iowa Code sections 708.11(3)(b)(1) and 708.11(3)(b)(4).

Lindell filed a motion for a bill of particulars, arguing the State had not alleged sufficient facts in its trial information and minutes of testimony to support a violation of the stalking statute, as the State had only detailed one incident of harassment in its minutes of testimony. In its ruling on Lindell's motion for a bill of particulars, the district court ordered that the State must "file a bill of particulars specifically stating the two or more occasions that constitute the course of conduct under Iowa Code section 708.11." The district court required that the two or

---

[1]Lindell received a deferred judgment, but for purposes of the stalking statute, it is the equivalent of a conviction. *See* Iowa Code § 708.11(4) (2009).

more occasions "shall be separate from those alleged in the Minutes of Testimony in [Lindell's prior conviction]."

In response, the State submitted additional minutes of testimony, detailing stalking incidents that had formed the factual basis for Lindell's prior conviction for stalking, but failed to file a bill of particulars in response to the court's order. Lindell then filed a motion to dismiss, alleging the State had failed to state at least one additional incident of harassing behavior, despite the court's order to do so. Thus, the trial information failed to contain sufficient facts to establish the necessary elements of the crime of stalking.

The State argued it had cured its defect by supplementing the minutes of testimony with information regarding Lindell's prior convictions. Lindell asserts that double jeopardy principles preclude the State from using the prior incidents to establish the course of conduct required in the current stalking charge. Specifically, Lindell argued that the use of the previous incidents, for which he was convicted, to prove the required course of conduct, would violate the Double Jeopardy Clause. The district court granted the motion to dismiss. The State appealed the decision of the district court. We retained the appeal.

**II. Scope of the Review.**

We review double jeopardy claims de novo, due to their constitutional nature. *State v. Kramer*, 760 N.W.2d 190, 193–94 (Iowa 2009). To the extent the issue involves the interpretation of a statute, this court reviews for correction of errors at law. *In re Det. of Johnson*, 805 N.W.2d 750, 753 (Iowa 2011).

**III. Discussion and Analysis.**

**A. Double Jeopardy.** Lindell asserts the State is putting him in jeopardy for conduct for which he has already been convicted and

punished. Specifically, he alleges the State is charging he violated Iowa Code section 708.11 by committing acts which also served as the basis for a prior conviction. The State alleges that Lindell's interpretation of the statute would allow those who have stalked a victim before to engage in "one free stalk" of that victim, so long as it occurs after a conviction.

1. *Iowa constitutional claim.* As an initial matter, the State argues that the double jeopardy provision of the Iowa constitution does not apply. We agree. Unlike some other constitutional provisions, Iowa's double jeopardy provision is distinct from the Federal Double Jeopardy Clause, merely requiring that "[n]o person shall after acquittal, be tried for the same offence." Iowa Const. art. I, § 12. As Lindell was not acquitted, we need not evaluate his claims based on Iowa's double jeopardy provision.

2. *Scope of federal double jeopardy protection.* The Double Jeopardy Clause of the United States Constitution states that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." U.S. Const. amend. V. The Fourteenth Amendment binds the states to the Double Jeopardy Clause. *Benton v. Maryland*, 395 U.S. 784, 794, 89 S. Ct. 2056, 2062, 23 L. Ed. 2d 707, 716 (1969); *State v. Franzen*, 495 N.W.2d 714, 715 (Iowa 1993). The Double Jeopardy Clause serves to create finality and to prevent prosecutorial overreaching. *State v. Burgess*, 639 N.W.2d 564, 568 (Iowa 2001). "The purpose of this clause is to protect against: (1) a second prosecution for the same offense after acquittal; (2) a second prosecution for the same offense after conviction; and (3) multiple punishments for the same offense." *Id.*

3. *Double jeopardy analysis hinges on legislative intent.* At its core, double jeopardy analysis asks what the legislature intended. *State v. McKettrick*, 480 N.W.2d 52, 57 (Iowa 1992). The central question is

whether Lindell is being subject to a second prosecution for the same offense for which he had previously been convicted and whether he is being punished again for the same offense. We note that it is the legislature, "and not the prosecution, which establishes and defines offenses. Few, if any, limitations are imposed by the Double Jeopardy Clause on the legislative power to define offenses." *Sanabria v. United States*, 437 U.S. 54, 69, 98 S. Ct. 2170, 2181, 57 L. Ed. 2d 43, 57 (1978).

> In considering a double jeopardy claim within the multiple punishments context, we are guided by the general principle that the question of what punishments are constitutionally permissible is no different from the question of what punishments the legislature intended to be imposed.

*McKettrick*, 480 N.W.2d at 57. Both the State, citing *Missouri v. Hunter*, 459 U.S. 359, 366–68, 103 S. Ct. 673, 678–79, 74 L. Ed. 2d 535, 542–44 (1983), and Lindell, citing *McKettrick*, 480 N.W.2d at 57, agree that the crux of the analysis of whether Lindell's right to be free from double jeopardy has been violated is a determination of what the legislature intended when it enacted the stalking statute.

**B. Intent of the Legislature.** We have consistently stated that the purpose of statutory interpretation is to determine legislative intent. *See, e.g., In re Estate of Bockwoldt*, 814 N.W.2d 215, 223 (Iowa 2012).

> "We give words their ordinary and common meaning by considering the context within which they are used, absent a statutory definition or an established meaning in the law. We also consider the legislative history of a statute, including prior enactments, when ascertaining legislative intent. When we interpret a statute, we assess the statute in its entirety, not just isolated words or phrases."

*Id.* (quoting *Doe v. Iowa Dep't of Human Servs.*, 786 N.W.2d 853, 858 (Iowa 2010)) (citations omitted).

In ascertaining legislative intent, we consider "the statute's subject matter, the object to be accomplished, the purpose to be served, underlying policies, remedies provided, and the consequences of the various interpretations." *State v. Dohlman*, 725 N.W.2d 428, 431 (Iowa 2006) (citation and internal quotation marks omitted). We also consider the legislative history of a statute when determining legislative intent. *Id.* at 431–32. Finally, we construe criminal statutes strictly and resolve doubts in favor of the accused. *State v. Adams*, 810 N.W.2d 365, 369 (Iowa 2012).

1. *Elements of Iowa's stalking law.* The State has charged Lindell with stalking, a violation of Iowa Code section 708.11. Three elements must occur to constitute stalking.

> *a.* The person purposefully engages in a course of conduct directed at a specific person that would cause a reasonable person to fear bodily injury to, or the death of, that specific person or a member of the specific person's immediate family.
>
> *b.* The person has knowledge or should have knowledge that the specific person will be placed in reasonable fear of bodily injury to, or the death of, that specific person or a member of the specific person's immediate family by the course of conduct.
>
> *c.* The person's conduct induces fear in the specific person of bodily injury to, or the death of, the specific person or a member of the specific person's immediate family.

Iowa Code § 708.11(2).

Lindell argued, and the district court agreed, that the State did not originally allege facts sufficient to prove the elements of stalking in the instant case. The State originally alleged that Lindell had committed only a single act supporting the stalking charge. Specifically, the State alleged that Lindell parked his vehicle in front of Astra Furniture, where A.C. worked as a bookkeeper, and looked through the window into the

office where she was working. When she looked up and made eye contact with him, he drove away. No other incident was detailed in the minutes of testimony.

Paragraph (*a*) of the stalking statute requires a "course of conduct." Iowa Code § 708.11(2)(*a*). Iowa's stalking statute defines "course of conduct" as "repeatedly maintaining a visual or physical proximity to a person without legitimate purpose or repeatedly conveying oral or written threats, threats implied by conduct, or a combination thereof, directed at or toward a person." *Id.* § 708.11(1)(*b*). Further, the statute defines "repeatedly" as "on two or more occasions." *Id.* § 708.11(1)(*d*).

2. *Using elements of one crime to prove another.* When an issue of possible double punishment presents itself, we often begin our double jeopardy analysis by examining the *Blockburger* elements test. *See Blockburger v. United States*, 284 U.S. 299, 304, 52 S. Ct. 180, 182, 76 L. Ed. 306, 309 (1932). However, we have typically used the *Blockburger* elements test in cases in which "two offenses charged under *separate* statutory provisions constitute the same offense for double jeopardy purposes." *State v. Schmitz,* 610 N.W.2d 514, 515–16 (Iowa 2000); *see, e.g., Burgess*, 639 N.W.2d at 568–70 (analyzing whether theft by deception and theft by misappropriation are the same offense for purposes of double jeopardy).

*Blockburger* is typically used to evaluate whether one offense is a lesser-included offense of another offense. *E.g., State v. Abrahamson*, 746 N.W.2d 270, 274 (Iowa 2008) ("Under the *Blockburger* analysis, the court would determine whether two offenses were the 'same' by comparing the elements of proof required for each offense."). Under *Blockburger,* proof of one element may be used to establish two different

crimes. 284 U.S. at 304, 52 S. Ct. at 182, 76 L. Ed. at 309 ("The applicable rule is that, where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of a fact which the other does not."). Lindell is, of course, being charged with a subsequent count of violating the same statute, and thus, a typical *Blockburger* analysis is not appropriate. Further, even if two statutes meet the *Blockburger* test, legislative intent continues to be the paramount piece of a double jeopardy analysis. *See State v. Bullock*, 638 N.W.2d 728, 732 (Iowa 2002) ("Even though a crime may meet the so-called *Blockburger* test for lesser-included offenses, it may still be separately punished if legislative intent for multiple punishments is otherwise indicated."). Thus, the traditional *Blockburger* elements test has no application to our analysis.

3. *Previous acts as evidence of course of conduct.* However, *Blockburger* does have application here beyond its traditional use. The central question in this case is whether the State can use proof that Lindell had previously engaged in an action "directed at a specific person that would cause a reasonable person to fear bodily injury to, or the death of, that specific person or a member of the specific person's immediate family" to establish that he was once again engaging in a course of conduct as described in the stalking statute. *See* Iowa Code §§ 708.1(*b*), .11(2)(*a*). We find that the legislature intended the *actus reus* of this crime to be the stalking behavior and that the question of whether this act was part of a course of conduct is intended as an evidentiary one.

Our cases, and the cases of other states, establish that proof of prior crimes is admissible if it is relevant. *E.g., State v. Helmers*, 753

N.W.2d 565, 570 (Iowa 2008) (proof of prior bad acts to establish *mens rea* is admissible); *Commonwealth v. Roefaro*, 691 A.2d 472, 474 (Pa. Super. Ct. 1997) ("[P]rior acts may be admissible to prove intent and course of conduct provided that their probative value is not outweighed by their prejudicial impact.").

We have previously applied *Blockburger* beyond the traditional elements test. *Schmitz*, 610 N.W.2d at 516–17. In *Schmitz*, we used *Blockburger* to analyze a situation where three separately charged offenses—which the defendant claimed were actually part of the same offense—were violations of the statutory provision. *Id.* The defendant in *Schmitz* faced three different theft charges involving control over stolen property. *Id.* at 517. We said the key factor for us to evaluate, based on the *Blockburger* guidance, was whether an act is "of a continuous nature, such that it is a course of conduct which is punishable." *Id.* at 516–17.

The stalking statute is explicitly a course of conduct statute. Iowa Code § 708.11(2)(*a*). Thus, our analysis turns on determining whether the legislature intended for the "two or more occasions" language to indicate that the *actus reus* explicitly requires two or more occasions for *each* offense, or whether that language was adopted to establish that the initial incident may have been merely an innocent encounter. Since stalking is a cumulative offense, "a mere overlap in proof between two prosecutions does not establish a double jeopardy violation." *United States v. Felix*, 503 U.S. 378, 386, 112 S. Ct. 1377, 1382, 118 L. Ed. 2d 25, 34 (1992).

Thus, to make our determination, we evaluate the history of the adoption of stalking laws generally, and in Iowa specifically.

4. *History of stalking laws.* Iowa's stalking statute was first enacted in 1992. 1992 Iowa Acts, ch. 1179 (codified at Iowa Code

§ 708.11 (1993)). Iowa was among the first states to enact a stalking statute following increased national awareness of the need to protect stalking victims. In the wake of five unrelated murders of women who had been stalked in California, California passed the first state anti-stalking legislation in 1990. Nat'l Inst. of Justice, U.S. Dep't of Justice, *Project to Develop a Model Anti-Stalking Code for States* 12 (Oct. 1993), *available at* http://www.popcenter.org/problems/stalking/PDFs/NIJ_ Stalking_1993.pdf [hereafter *Project to Develop a Model Anti-Stalking Code*]. Twenty-nine states, including Iowa, passed anti-stalking laws in 1992, followed by eighteen additional states and the District of Columbia in 1993. *Id.* at 12 & nn.7–8. Iowa's original statute, thus, preceded the Model Anti-Stalking Code published by the Department of Justice in 1993. *See* Iowa Code § 708.11 (1993); *id.* § 3.7 (making acts effective July 1, 1992); *Project to Develop a Model Anti-Stalking Code* 12.

Shortly after the Department of Justice published its Model Anti-Stalking Code, the Iowa legislature revised its statute and adopted much of the same language proposed by the model code into Iowa's stalking law. *See* 1994 Iowa Acts ch. 1093 (codified at Iowa Code § 708.11 (1995)); *Project to Develop a Model Anti-Stalking Code* 43–44. Specifically, the legislature adopted a slightly-modified definition of "course of conduct" and a verbatim definition of "repeatedly" from the Model Anti-Stalking Code, as well as adopting most of the recommendations in the model code designed to protect stalking victims. *Id.* These definitions were in effect in 2010 and 2011, the time of the alleged stalking incidents here. *See* Iowa Code § 708.11 (2009).

When we ascertain legislative intent, we consider the statute's purpose and the object it was intended to accomplish. *Dohlman*, 725 N.W.2d at 431. Since the language of the statute was derived directly

from the Model Anti-Stalking Code, we look to the comments from the model code to aid us in determining legislative intent. This is not a novel way for us to interpret legislative intent in situations where our legislators have not given us clear guidance in the form of stated legislative findings or purpose. "In the absence of instructive Iowa legislative history, we look to the comments and statements of purpose contained in [uniform acts] to guide our interpretation of the comparable provision of [an Iowa act.]" *In re Marriage of Shanks*, 758 N.W.2d 506, 512 (Iowa 2008); *see, e.g.*, *Mulhern v. Catholic Health Initiatives*, 799 N.W.2d 104, 115 (Iowa 2011) ("Our court has relied on the drafter's comments to the Uniform Act in construing the Iowa act."); *State v. Olsen*, 618 N.W.2d 346, 348–49 (Iowa 2000) (using the Model Ongoing Criminal Conduct Act to discern legislative intent for Iowa's ongoing criminal conduct statute); *State v. Hogrefe*, 557 N.W.2d 871, 877 (Iowa 1996) (using the Model Penal Code to interpret a state criminal statute modeled after the code). The authors of the *Project* encouraged states to develop a continuum of charges to assist law enforcement officials in intervening at various stages and further encouraged felony classification for more egregious forms of stalking. *Project to Develop a Model Anti-Stalking Code* 46.

> Stalkers may be obsessive, unpredictable, and potentially violent. They often commit a series of increasingly serious acts, which may become suddenly violent, and result in the victim's injury or death. . . .
>
> . . . .
>
> . . . Policies governing the release of convicted stalkers on probation or parole should take into account that some stalkers may be more dangerous once they are released from prison, and that stalking behavior often escalates into violence as time passes and the stalker's obsession with the victim grows.

*Id.* at 49–50.

The Model Anti-Stalking Code also recommended increased penalties in situations where a stalker violates a protective order and recommended "severe [sentencing] enhancements [be] available in instances in which the defendant has committed a previous felony or stalking offense against the same victim within a certain number of years." *Project to Develop a Model Anti-Stalking Code* 50. The authors of the model code argued, "Appropriate and reasonable mechanisms for managing the stalker should be incorporated into states' sentencing schemes to reduce the potential threat to the victim." *Id.* The Iowa legislature adopted both of these recommendations. Iowa Code §708.11(3)(*b*)(1), (4). Additionally, our legislature enacted amendments to the stalking statute to increase its ability to prevent the serious consequences of escalating stalking behavior. *See, e.g., id.* § 708.11(3) (amending the statute to increase penalties).

The authors of the model code further warned,

> This country's experience with domestic violence has produced indisputable evidence of the risks of ignoring the potential for violence in these cases or failing to intervene as early as possible to change the victimizer's behavior toward his victim. . . .
>
> . . . Over time, the stalker's behavior may have life threatening consequences for the victim.
>
> . . . Without notice or apparent reason, [the stalker's] behavior may turn violent rapidly.

*Project to Develop a Model Anti-Stalking Code* 92.

While urging a multidisciplinary approach to the problem of stalking, the authors further noted,

> The uncertain motives and intentions of the suspected stalker and his obsessive and unpredictable behavior place

his victim at great risk of bodily injury or death, as well as psychological trauma.

A principal objective of an anti-stalking strategy is to intervene in a suspected stalking before the stalking victim is injured or killed.

*Project to Develop a Model Anti-Stalking Code* 69.

Stalking, in fact, is often a predicate to violence. Belinda Wiggins, Note, *Stalking Humans: Is There a Need for Federalization of Anti-Stalking Laws in Order to Prevent Recidivism in Stalking?*, 50 Syracuse L. Rev. 1067, 1073 (2000).

Whereas two percent of stalking victims are killed, three to thirty-six percent of stalking victims become victims of assault and battery which include permanent disfigurement. Using current victimization rates, 28,000 stalking victims will be murdered, and over 500,000 stalking victims will be victims of assault and battery each year.

*Id.* Victims often become so traumatized that it affects multiple areas of their lives. *Id.*

The question we must answer, then, is whether the legislature intended to give a convicted stalker one "free" opportunity to "purposefully engage[] in. . . .[any] conduct directed at a specific person that would cause a reasonable person to fear bodily injury to, or the death of, that specific person or a member of that specific person's immediate family." *See* Iowa Code § 708.11(2)(*a*). This "one free stalk" is not a reasonable interpretation of the legislature's intent in enacting this statute. *See Project to Develop a Model Anti-Stalking Code* 49–50.

A.C. obtained an order of protection in Polk County on April 26, 2010, then obtained another one in Scott County on July 11, 2010. The State alleged that Lindell violated either one or both of the protective orders in six discrete incidents beginning on July 4, 2010. Lindell "made contact" with A.C. on July 4, July 6, and July 9, 2010. The record does

not speak as to the content of all of those contacts. However, one of the contacts was in person. On July 11, 2010, Lindell was outside A.C.'s residence at 2:00 a.m. and was apprehended a short distance away. Prior to apprehension, Lindell flattened A.C.'s tires, damaged her landscaping, and destroyed her birdhouse. On August 23, 2010, he made two separate "hang-up" phone calls to A.C., one from his own cellphone and one from the cellphone of a friend. On December 15, 2010, Lindell pled guilty to stalking, first offense, with protective order, and to criminal mischief fourth degree, for crimes committed against A.C. He received a deferred judgment and probation on his pleas. The incident which precipitated the stalking, second offense, charge occurred on January 25, 2011, five days after sentencing. Though Lindell did not serve time in jail, his documented stalking behavior spanned over six months, with some degree of escalation. Undoubtedly, it was the intent of the legislature to prevent this type of long-term stalking that serves to frighten the victim and threatens to escalate as the stalker's obsession grows.

This interpretation is consistent with other states that have similar stalking laws. Though double jeopardy was not a factor in *Commonwealth v. Urrutia*, the Pennsylvania Superior Court interpreted the intent of the legislature in enacting a stalking statute similar to Iowa's. 653 A.2d 706, 708 (Pa. Super. Ct. 1995). The *Urrutia* court explained, "Pennsylvania enacted a stalking statute because of the growing perceived need to provide increased protection against certain types of predatory behavior. . . . The legislative scheme . . . was an attempt to interrupt as early as possible the escalating cycle of violence." *Id.* Pennsylvania's Superior Court became even more outspoken when

another defendant raised the double jeopardy argument in much the same way Lindell has raised it in this case.

In *Roefaro,* the defendant raised a double jeopardy concern after his prior convictions were used to help establish a course of conduct for his current conviction. *Roefaro,* 691 A.2d at 474–75. Subsequent to these prior convictions, the defendant committed *one* additional action— violating the no-contact order and leaving items on the victim's sister's porch. *Id.* at 474. The *Roefaro* court held that these prior convictions were admissible as evidence to "prove a course of conduct, of acting in a similar manner." *Id.* at 475. When Roefaro claimed this was a violation of the prohibition against double jeopardy, the court stated,

> This is a ludicrous argument that misstates and contorts the law of double jeopardy and . . . leads to absurd results.
>
> . . . .
>
> . . . Taken to its natural, yet wholly illogical and absurd extent, this rationale would provide a person with one 'free stalk' following a prior stalking conviction.

*Id.* at 474–75.

The Georgia Court of Appeals further articulated the purpose of stalking statutes in *Daker v. State,* 548 S.E.2d 354 (Ga. Ct. App. 2001). Though the case is factually distinct from the instant case because the new charges involved more than one incident, the State did use the same evidence in prosecutions in two counties to establish a course of conduct. *Id.* at 355. Daker argued that the use of evidence in one trial "used up" the evidence and made it inadmissible at the second trial. *Id.* at 356. The court noted, however,

> As stalking is, by its very nature, a cumulative crime, Daker's interpretation of double jeopardy would eviscerate the purpose of the stalking statute, leaving would-be stalkers free to begin stalking their victim with a clean slate following

a stalking conviction. We cannot believe the legislature intended such result.

*Id.*

The Wyoming Supreme Court agreed with the Georgia Court of Appeals, quoting the above language verbatim in its opinion. *Snow v. State,* 216 P.3d 505, 511 (Wyo. 2009). The *Snow* court continued,

> We conclude that the fact that the appellant was punished for violating a protection order did not prohibit his also being punished for felony stalking, despite the fact that the conduct upon which the protection order violation was based became part of the conduct upon which the felony stalking conviction was based.

*Id.* at 512. As with Lindell, Snow had committed crimes against his victim previous to being charged with stalking. If we were to hold that evidence of previous convictions could not be used in a stalking charge, we would essentially be giving a free pass from stalking charges to anyone who chose to engage in stalking behavior that also violated other laws, such as criminal mischief or felony property destruction, as long as they had been convicted of those charges prior to the time the stalking charge was brought.

The Court of Criminal Appeals of Alabama also held that "in order to show a course of conduct in a stalking case, the admission of a defendant's prior convictions for bad acts concerning the stalking victim does not constitute a violation of a defendant's protection against double jeopardy." *Jones v. State,* 915 So. 2d 78, 83 (Ala. Crim. App. 2005) (citing *Mims v. State,* 816 So. 2d 509, 515–16 (Ala. Crim. App. 2001)). The *Mims* court also dealt with convictions for crimes other than stalking specifically and found that "the testimony of the [defendant's] prior bad acts—even those for which he might have already been prosecuted—was

properly admitted and was necessary to establish a course of conduct by the [defendant]." 816 So. 2d at 516.

Only Idaho appears to sympathize somewhat with Lindell's position, although *State v. Stewart*, 234 P.3d 707 (Idaho 2010), is not precisely on point. In *Stewart*, the Idaho Supreme Court found that in order to violate its statute forbidding a course of conduct "where the actions constituting the offense are in violation of a no contact order," all of the actions must occur *after* the issuance of the protective order. *Id.* at 714–15. The *Stewart* court made its decision based on its statutory definition of felony stalking. *Id.* Though the two statutes are similar,[2] all of the instances of stalking here occurred after the issuance of two protective orders, making this case factually distinguishable.

The Ohio legislature has written Ohio's stalking statute specifically to define "pattern of conduct" as including "two or more actions or incidents closely related in time, whether or not there has been a prior conviction based on any of those actions or incidents." Ohio Rev. Code

---

[2]In pertinent part, the Idaho Code provides:

1. A person commits the crime of stalking in the first degree if the person violates section 18–7906, Idaho Code, and:

(a) The actions constituting the offense are in violation of a temporary restraining order, protection order, no contact order or injunction, or any combination thereof; or . . . .

Idaho Code Ann. § 18–7905 (2004).

Similarly, Iowa Code section 708.11(3) provides:

*b.* A person who commits stalking in violation of this section commits a class "D" felony if any of the following apply:

1. The person commits stalking while subject to restrictions contained in a criminal or civil protective order or injunction, or any other court order which prohibits contact between the person and the victim, or while subject to restrictions contained in a criminal or civil protective order or injunction or other court order which prohibits contact between the person and another person against whom the person has committed a public offense.

Iowa Code § 708.11(3)(*b*) (2009)

Ann. § 2903.211(D)(1)(2010). Though Iowa's statute has not explicitly made it clear that prior convictions could be considered in determining whether there is a course of conduct, the Ohio Court of Appeals held that the legislature's intent to use evidence of prior convictions to demonstrate a pattern of conduct did not violate the Double Jeopardy Clause of the Federal Constitution. *State v. Werfel*, Nos. 2002–L–101, 2002–L–102, 2003 WL 22994981 *2–3 (Ohio Ct. App. Dec. 22, 2003) (unpublished opinion). A proper analysis should focus on legislative intent. *See Hunter*, 459 U.S. at 368, 103 S. Ct. at 679, 74 L. Ed. 2d at 543 ("The question of what punishments are constitutionally permissible is no different from the question of what punishment the Legislative Branch intended to be imposed."); *State v. Reed*, 618 N.W.2d 327, 336 (Iowa 2000); *State v. Taylor*, 596 N.W.2d 55, 57 (Iowa 1999); *State v. Hickman*, 576 N.W.2d 364, 368 (Iowa 1998); *McKettrick*, 480 N.W.2d at 57.

While Lindell attempts to distinguish these and other cases factually, the salient point is that other states have consistently interpreted similar statutes as existing to protect the victim and as opposed to the concept of "one free stalk." *See, e.g.*, *Daker*, 548 S.E.2d at 356–57; *Roefaro*, 691 A.2d at 474–75. *But see, e.g.*, *People v. Herron*, 251 P.3d 1190, 1194 (Colo. App. 2010) ("[F]or defendant to be convicted of stalking, he had to have followed, approached, contacted, or surveiled [the victim] on at least two occasions. To be convicted of a second stalking offense, he would have had to so act, in a separate transaction that is factually distinct from the first, on at least two more occasions."). Since double jeopardy analysis is driven exclusively by legislative intent, we conclude that Lindell's interpretation is not consistent with the intent of legislatures adopting statutes in conformance with the Model Anti-Stalking Code.

5. *Increased prosecutorial discretion.* We have previously rejected an interpretation of a statute partially due to concern that the interpretation would result in piecemeal prosecution as a means of avoiding the need to comply with the speedy trial rule. *Abrahamson*, 746 N.W.2d at 277. If we were to adopt the interpretation Lindell urges, we could be encouraging prosecutors to withhold an occurrence from the initial prosecution to ensure that a victim would continue to be protected from potentially escalating violence after the stalker's slate has been "wiped clean." We could also be opening the door for someone involved in a discrete series of events to be prosecuted for several courses of conduct by defining each set of occurrences as an independent violation of the statute. Thus, under this theory, Lindell's original prosecution— which included six independent occurrences—could have been for three different violations of the stalking statute.

Commentators have raised concerns regarding allowing prosecutors to fragment charges, particularly when those charges are raised in successive trials. *E.g.*, Anne Bowen Poulin, *Double Jeopardy Protection from Successive Prosecution: A Proposed Approach*, 92 Geo. L.J. 1183, 1191–96 (2004).

> By fragmenting its case, the prosecution enhances the likelihood that the defendant will receive a higher sentence for three reasons. First, the prosecution can extend its period of control over the defendant by bringing successive prosecutions. Second, the prosecution may employ successive related convictions to realize a higher cumulative sentence. Finally, the prosecution can sometimes obtain a guilty plea and secure a base sentence in the first prosecution, and then press for a higher sentence in a later prosecution.

*Id.* at 1194–95 (footnote omitted).

One of the primary purposes of the Double Jeopardy Clause is to create finality and prevent prosecutorial overreaching. *Burgess*, 639

N.W.2d at 568. It seems clear the legislature intended for a single course of conduct to be prosecuted as such, and then to allow a convicted stalker to avoid repeated prosecutions for that same course of conduct, based on a prosecutor deciding to create multiple two-instance counts. Under that interpretation, Lindell could have been prosecuted for four or more initial counts. Treating each instance as part of the evidence to determine a course of conduct instead of as the *actus reus* helps prevent prosecutorial overreaching, while preserving the intent of the legislature in protecting victims of stalking.

**C. The Rule of Lenity.** We construe criminal statutes strictly and resolve doubts in favor of the accused. *State v. Schultz*, 604 N.W.2d 60, 62 (Iowa 1999).

Further, "[w]e recognize the principle of construing a statute reasonably in light of its plain purpose is sometimes in tension with the rule of lenity, which directs that criminal statutes are to be strictly construed in favor of the accused." *State v. Hearn*, 797 N.W.2d 577, 585 (Iowa 2011). While the precise scope of the rule of lenity is difficult to ascertain, we have recognized that the United States Supreme Court has, in recent years, "embraced a relatively narrow view of the rule." *Id.* at 586. Under what is frequently termed the "*Moskal* approach" (in light of the leading case), "the question of whether a statute is sufficiently 'ambiguous' to invoke the rule of lenity is confronted only after the court has exhausted all interpretive techniques, including consideration of legislative history and other extrinsic evidence." *Id.* (citing *Moskal v. United States*, 498 U.S. 103, 108, 111 S. Ct. 461, 465, 112 L. Ed. 2d 449, 458 (1990)). We further noted that the United States Supreme Court has established that the rule of lenity is to be applied exclusively in cases of "grievous ambiguity." *Id.* Essentially, we noted the United States Supreme Court tends to view the rule of lenity as a "tie breaker in

cases where there is no basis for choosing among plausible interpretations of a statute." *Id.*

Though we recognized in *Hearn* that our cases "tend to be conclusory, less than nuanced, and arguably inconsistent" with regard to the rule of lenity, we also acknowledged that part of the problem in applying the rule is that "extrinsic legislative history in Iowa is generally sparse." *Id.* However, we recognize that where the legislative intent is clear, "we see no appreciable risk that a defendant would be without fair notice that [his] conduct . . . could give rise to additional criminal liability." *Id.*

Here, where the legislative history is enhanced by the comments to the model code on which Iowa's statute is based, it is easier to determine legislative intent than is typical in Iowa. Further, Lindell was subject to two orders of protection. He was on notice his behavior could give rise to additional criminal liability. The rule of lenity does not apply.

### IV.  Disposition.

We conclude the intent of the legislature in enacting Iowa Code section 708.11 was clear and unambiguous. The legislature did not intend to allow a stalker to continue a pattern of stalking behavior and be protected under the shield of double jeopardy. Since the Double Jeopardy Clause does not act as a restraint on legislative power, the stalking statute, as applied in this case, does not violate the Double Jeopardy Clause. Further, the statute gave fair notice to Lindell that his conduct could potentially give rise to criminal liability. Thus, the rule of lenity would not apply.

**REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.**

All justices concur except Mansfield, J., Cady, C.J., and Appel, J., who dissent.

**MANSFIELD, Justice (dissenting).**

I respectfully dissent and would affirm the district court.

The Double Jeopardy Clause of the United States Constitution provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V. In this case, Christopher Lindell was originally charged with stalking A.C. based on a number of incidents that occurred during the June–August 2010 time period. "Stalking" involves a "course of conduct," in other words, "two or more occasions" of "maintaining a visual or physical proximity to a person without legitimate purpose or . . . conveying oral or written threats, threats implied by conduct, or a combination thereof, directed at or toward a person" that "induce[] fear in the specific person of bodily injury to, or the death of, the specific person." *See* Iowa Code § 708.11 (2009). On December 15, 2010, Lindell pled guilty to that charge of stalking.

Lindell subsequently put himself in proximity to A.C. again on January 25, 2011. The State charged Lindell with stalking once more and attempted to use the June–August 2010 incidents plus the single January 25, 2011 incident as the basis for the new charge.

I believe the district court correctly concluded that this would amount to a double jeopardy violation. Stalking requires a course of conduct, but there was no second course of conduct—only a single new incident of harassment. Ask this question: Assuming no earlier criminal case, could the State have prosecuted Lindell after January 25, 2011, for *two* separate counts of stalking—one consisting of the events from June 2010–August 2010 and the other consisting of the events from June 2010–August 2010 plus the January 25, 2011 incident? I think the

answer is clearly no. Accordingly, the Double Jeopardy Clause bars the successive prosecutions here. *See Brown v. Ohio*, 432 U.S. 161, 166, 97 S. Ct. 2221, 2226, 53 L. Ed. 2d 187, 194–95 (1977).

*Brown* seems to me the controlling precedent. In that case, the defendant stole a car in East Cleveland on November 29. *Id.* at 162, 97 S. Ct. at 2223, 53 L. Ed. 2d at 192. He was caught driving that car in Wickliffe on December 8. *Id.* After being apprehended in Wickliffe, the defendant was charged with "joyriding" (taking or operating the car without the owner's consent) "on or about December 8," and pled guilty. *Id.* at 162, 97 S. Ct. at 2224, 53 L. Ed. 2d at 192. Later, he was returned to East Cleveland. *Id.* There he was charged with and pled guilty to a theft of the car "on or about the 29th day of November." *Id.* at 163, 97 S. Ct. at 2224, 53 L. Ed. 2d at 192. The Supreme Court held the defendant's double jeopardy objection to the second prosecution should have been sustained. The Court explained:

> After correctly holding that joyriding and auto theft are the same offense under the Double Jeopardy Clause, the Ohio Court of Appeals nevertheless concluded that Nathaniel Brown could be convicted of both crimes because the charges against him focused on different parts of his 9-day joyride. We hold a different view. The Double Jeopardy Clause is not such a fragile guarantee that prosecutors can avoid its limitations by the simple expedient of dividing a single crime into a series of temporal or spatial units. The applicable Ohio statutes, as written and as construed in this case, make the theft and operation of a single car a single offense. Although the Wickliffe and East Cleveland authorities may have had different perspectives on Brown's offense, it was still only one offense under Ohio law. Accordingly, the specification of different dates in the two charges on which Brown was convicted cannot alter the fact that he was placed twice in jeopardy for the same offense in violation of the Fifth and Fourteenth Amendments.

*Id.* at 169–70, 97 S. Ct. at 2227, 53 L. Ed. 2d at 196–97 (citations omitted). In a footnote, the Court acknowledged, "We would have a

different case if the Ohio Legislature had provided that joyriding is a separate offense for each day in which a motor vehicle is operated without the owner's consent." *Id.* at 170 n.8, 97 S. Ct. at 2227 n.8, 53 L. Ed. 2d at 196 n.8.

I think we have the same situation here. Iowa requires a course of conduct for a stalking conviction, consisting of two or more incidents. But just as there was only one joyride/theft in *Brown*, regardless of the fact that the two prosecutions focused on different time periods, there was only one course of conduct here. The incident that triggered Lindell's second prosecution did not amount to a course of conduct in itself and had to be tacked onto the earlier course of conduct for which Lindell had already been prosecuted and pled guilty.

The out-of-state stalking cases relied on by the majority are generally distinguishable because the second prosecution involved an entirely separate course of conduct that had not been the subject of a prior criminal prosecution. Those courts rightly concluded that merely admitting evidence of the previously prosecuted conduct did not violate double jeopardy principles, so long as there was sufficient unprosecuted conduct to support the new charges. *See Mims v. State,* 816 So. 2d 509, 516 (Ala. Crim. App. 2001) (concluding that "no evidence was offered to prove any specific prior prosecution or conviction" and "the prosecution presented far more evidence of a course of conduct establishing the appellant's following and harassing White than the evidence the appellant complains of here"); *Daker v. State,* 548 S.E.2d 354, 357 (Ga. Ct. App. 2001) ("Daker was prosecuted for altogether different incidents in Cobb County. The fact that evidence of the Fulton County incidents was admitted during the Cobb County trial does not change the result."); *Commonwealth v. Roefaro,* 691 A.2d 472, 474–75 (Pa. Super. Ct. 1997)

("[A]ppellant was twice tried and convicted for actions arising out of separate and distinct factual predicates."); *see also Snow v. State*, 216 P.3d 505, 511 (Wyo. 2009) (finding no double jeopardy bar to simultaneous prosecution and convictions of the defendant for both violating a protection order and stalking, because the former was not a lesser-included offense of the latter). This case is different because the new conduct is sufficient only when combined with the prior conduct for which Lindell had already been prosecuted.[3]

As noted by my colleagues, an Idaho case seems to indicate that the circumstances here would amount to a double jeopardy violation. *See State v. Stewart*, 234 P.3d 707, 713 (Idaho 2010). But it is not a loner. In *State v. Fox*, the North Carolina Court of Appeals confronted the situation where the defendant had previously been convicted of stalking for a February–March 2009 series of incidents. *See* 721 S.E.2d 673, 674 (N.C. Ct. App. 2011). He then was prosecuted again for stalking based on the incidents from February 2009–March 2009 *plus* subsequent events. *Id.* at 676–77. The court vacated the second conviction on double jeopardy grounds. *Id.* at 678. Similarly, in *People*

---

[3]*United States v. Felix*, also cited by the majority, is distinguishable on the same grounds. *See* 503 U.S. 378, 112 S. Ct. 1377, 118 L. Ed. 2d 25 (1992). In that case, the defendant engaged in separate methamphetamine manufacturing activities in Oklahoma and later in Missouri. *Id.* at 380, 112 S. Ct. at 1379–80, 118 L. Ed. 2d at 30. When the defendant was prosecuted for the Missouri conduct, "[i]n order to establish Felix's criminal intent with respect to the items delivered in Missouri, the Government introduced evidence that Felix had manufactured methamphetamine in Oklahoma earlier in 1987." *Id.* at 381, 112 S. Ct. at 1380, 118 L. Ed. 2d at 31. The government subsequently prosecuted the defendant for the Oklahoma activity as well. *Id.* at 382, 112 S. Ct. at 1380, 118 L. Ed. 2d at 31. The United States Supreme Court found no double jeopardy violation arising out of the Oklahoma prosecution because "[a]t the Missouri trial, the Government did not in any way *prosecute* Felix for the Oklahoma methamphetamine transactions; it simply introduced those transactions as prior acts evidence under Rule 404(b)." *Id.* at 387, 112 S. Ct. at 1383, 118 L. Ed. 2d at 34. Here, by contrast, the June 2010–August 2010 conduct was a necessary component of the second stalking charge; it was not merely going to be evidence of the defendant's intent under Iowa Rule of Evidence 5.404(*b*).

*v. Herron*, 251 P.3d 1190 (Colo. App. 2010), the Colorado Court of Appeals said:

> Thus, for defendant to be convicted of stalking, he had to have followed, approached, contacted, or surveiled Ms. R on at least two occasions. To be convicted of a second stalking offense, he would have had to so act, in a separate transaction that is factually distinct from the first, on at least two more occasions.

*Herron*, 251 P.3d at 1194; *see also Vazquez v. State*, 953 So. 2d 569, 571 (Fla. Dist. Ct. App. 2007) (vacating a second stalking conviction on double jeopardy grounds where "[t]he charging document for the simple stalking charge on which appellant was previously convicted alleges that on November 18 and 19, 2002, appellant 'repeatedly telephone [sic], harassed, and threatened Ms. Atencio' " and the second information alleged that " 'between 11–16–02 and 12–4–02' appellant 'did knowingly, willfully, maliciously, and repeatedly follow or harass' " Ms. Atencio); *Eichelberger v. State*, 949 So. 2d 358, 361 (Fla. Dist. Ct. App. 2007) (finding a second stalking prosecution violated the Double Jeopardy Clause where the state "did not allege or establish the end of one course of conduct and the start of a new course of conduct"); *Peckinpaugh v. State*, 743 N.E.2d 1238, 1241 (Ind. Ct. App. 2001) ("[I]n Indiana, a defendant may be convicted of separate counts of stalking the same victim if the respective series of incidents upon which the charges are based can be divided into distinct and separate series."); *People v. White*, 536 N.W.2d 876, 881–82 (Mich. Ct. App. 1995) (finding no double jeopardy violation where the defendant "pleaded guilty of two separate episodes of stalking," each involving two or more acts); *State v. Vigil*, 65 S.W.3d 26, 35–36 (Tenn. Crim. App. 2001) (barring a second stalking prosecution on double jeopardy grounds and noting that "[f]rom the record before us, there is no indication that an event occurred before the

February 18, 1997 incident to break the continuous course of conduct that constituted the stalking offense as charged in Case No. 23386, which covered the events from February 1996 to January 1997").

My colleagues discuss *State v. Schmitz*, which I agree is a relevant precedent. *See* 610 N.W.2d 514 (Iowa 2000). However, contrary to my colleagues, I believe *Schmitz* supports a finding of double jeopardy here. In *Schmitz*, the defendant was charged with three counts of theft. *Id.* at 515. Each count was based on the defendant's possession of a separate item (an aquarium, a jacket, and four wheels/tires) that had been stolen from a different location at a different time. *Id.* The thefts had occurred seven to ten months apart. *Id.* In finding no double jeopardy violation, we emphasized that theft is not a "continuing offense" based on a "course of conduct," and that each theft charge against Schmitz required different "proof of facts." *Id.* at 517–18. Those factors cut the other way here. Stalking *is* a course of conduct offense, and to prove stalking in the present case the State must use conduct that it already used to convict Lindell of stalking.

If the legislature wanted to relieve the State from the burden of having to prove a second course of conduct in order to obtain a second stalking conviction, it could have defined the offense in the same way Ohio has done, as including a prior stalking conviction, plus just one new incident of harassment. *See* Ohio Rev. Code Ann. § 2903.211(D)(1) (West, Westlaw through 2012 laws and statewide issues of the 129th GA (2011–2012)). Our general assembly did not do this. We must consider "[w]hat [the legislature] has made the allowable unit of prosecution." *Bell v. United States*, 349 U.S. 81, 81, 75 S. Ct. 620, 621, 99 L. Ed. 905, 909 (1955) (citation and internal quotation marks omitted).

In sum, the Double Jeopardy Clause prohibits the State from using the same conduct as all or part of the basis for two convictions of the same offense. By way of analogy, suppose an individual works at an office where cash is kept in a locked drawer. She opens the drawer and steals $750 on May 1, and then opens the drawer and steals $500 on May 2. By the majority's logic, she could be convicted of third-degree theft (property exceeding $500) for the May 1 theft and then later be convicted of second-degree theft (property exceeding $1000) for the May 1/May 2 combined theft. *See* Iowa Code §§ 714.2(2)–(3), .3. Similar to the foregoing scenario, the majority opinion results in Lindell's being "twice put in jeopardy" for his actions from June 2010 through August 2010. *See* U.S. Const. amend. V. I believe this violates the Fifth and Fourteenth Amendments to the United States Constitution.

For the foregoing reasons, I respectfully dissent.

Cady, C.J., and Appel, J., join this opinion.