**IN THE COURT OF APPEALS OF IOWA**

No. 17-0634
Filed April 18, 2018

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**TAVISH COLEON SHACKFORD,**
        Defendant-Appellant.

_____

Appeal from the Iowa District Court for Polk County, Robert J. Blink, Judge.


Tavish Shackford appeals from his convictions for willful injury causing bodily injury and intimidation with a dangerous weapon with intent. **AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**



Mark C. Smith, State Appellate Defender, and Vidhya K. Reddy, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, and Benjamin M. Parrott, Assistant Attorney General, for appellee.


Considered by Danilson, C.J., and Vaitheswaran and Bower, JJ.

**DANILSON, Chief Judge.**

Tavish Shackford appeals from his convictions for willful injury causing bodily injury, a class "D" felony, in violation of Iowa Code section 708.4(2) (2016),[1] and intimidation with a dangerous weapon with intent, a class "C" felony, in violation of section 708.6.  Shackford contends defense counsel rendered ineffective assistance by failing to challenge the sufficiency of the evidence to support the intimidation-with-a-dangerous-weapon conviction and failing to object to testimony reiterating out-of-court statements on hearsay and confrontation clause grounds.  Shackford also asserts the district court applied an incorrect standard in ruling on Shackford's motion for new trial.

Because prejudice has not been shown, we find no ineffective assistance of counsel with respect to the failure to object to testimony regarding out-of-court-statements.  We also find no error in the standard applied in ruling on the motion for new trial or the court's denial of the motion as it related to the willful-injury-causing-bodily-injury count.  However, we conclude trial counsel did render ineffective assistance in failing to object to the sufficiency of the evidence supporting the charge of intimidation with a dangerous weapon with intent, and we reverse and remand for dismissal of that charge and entry of a corrected judgment.

**I. Background Facts & Proceedings.**

In the early morning hours of April 17, 2016, Shackford was at a bar in Des Moines with his girlfriend and her friend.  Tyler Armel and a group of his friends

---

[1] Shackford was originally charged with willful injury causing serious injury, a class "C" felony; the jury found him guilty of the lesser-included offense.

waited outside until Shackford's group exited the bar.[2] Armel and his friends followed Shackford's group into the parking garage and attempted to start a fight. The fight was broken up by police officers, and Shackford left the garage as a passenger in his girlfriend's vehicle—a silver Honda Civic—at 2:12 a. m. A security video showed the altercation stopped by officers and the exact time Shackford exited the parking garage.

At the trial held January 11 and 12, 2017, Armel admitted he had followed Shackford into the parking garage for the sole purpose of fighting him. Armel stated after the police ordered him and his friends to leave, he spent about fifteen minutes looking for his brother and then drove home (a five to ten minute drive).

Armel stated he arrived home in his vehicle and three of his friends arrived in at least one separate vehicle. One of the friends was James Wright, who was not present to testify at trial. Armel explained:

> Q. What happened when you got home? A. As soon as I got out of my car—I left my car on because I was about to go to like an after party or something with my friends. And I walked to my front door, and I was about to walk in, and as soon as I put my key in the door, [my friend] said, "Hold on, Bro."
> . . . .
> A. He said, "Hold on, Bro." I said, "What's going on?" James was about to pull off and he stopped and he got out of his car, and he said, "Tyler, Coleon is pulling up."[3]

Armel stated a black Mercedes stopped in the street in front of Armel's home. Armel said he recognized it to be a vehicle Shackford had driven before. Armel walked down the front sidewalk leading from his home to the street towards the

---

[2] Shackford and Armel were former friends who had a volatile falling out. Shackford and Armel had a few altercations prior to and following the incident giving rise to this matter.
[3] Armel refers to Shackford by his middle name "Coleon."

vehicle. Armel stated the passenger window of the Mercedes was rolled down and he saw only one person in the car whom he identified as Shackford. Armel stated he saw Shackford point a gun at him and asked Shackford, "Are you going to shoot me?" Armel stated Shackford fired the gun, and Armel attempted to run around the side of his house. Armel estimated Shackford fired six more shots. Armel was shot in the thigh.

Wright rushed Armel to the hospital where his wound was treated. At 3:16 a.m., Officer Brian Kelley was dispatched to the hospital where he spoke with Armel. Armel identified Shackford as the shooter. Officer Kelley enlisted the help of West Des Moines police officers to go to Shackford's home in West Des Moines. No West Des Moines police officers were called to testify at trial. Officer Kelley stated the West Des Moines police officers did not locate the Mercedes at Shackford's residence and did not speak to anyone, although they observed a man inside the home close the blinds.

Shackford resided with his mother, Angela Phelps. Phelps stated when she arrived home on April 17 between 3:30 and 4:30 a.m., the Mercedes was parked in the driveway. Phelps explained she keeps the keys to the Mercedes either on her person or stored in her locked bedroom, and Shackford cannot drive the Mercedes without her permission. Upon arriving home on April 17, Phelps saw West Des Moines police officers coming over the fence out of her backyard and asked them why they were there. The officers told Phelps there had been a shooting and they were looking for Shackford. Phelps refused to let the police officers into her home without a warrant. When she went inside, Phelps saw that Shackford was there as well as his girlfriend and his younger brother.

At trial, Shackford explained that on April 17, after the police directed the individuals in the parking garage to go their separate ways, his group left in his girlfriend's car at about 2:17 a.m. Shackford stated they drove around the area for approximately twenty minutes looking for his younger brother. After they found his brother, they dropped another passenger off by his car and drove to Shackford's home in West Des Moines. Shackford estimated they arrived home at about 3 a.m. Shackford stated he did not leave the home for the remainder of the night. Shackford's girlfriend and younger brother also stated at trial that Shackford did not leave the house again that night.

On January 13, 2017, the jury returned its verdict finding Shackford guilty of willful injury causing bodily injury and intimidation with a dangerous weapon with intent. Shackford filed a motion for new trial on January 23, 2017. The court denied the motion for new trial and entered its sentencing order on April 4, 2017. Shackford now appeals.

## II. Standard of Review.

"We review ineffective-assistance-of-counsel claims de novo." *State v. Tompkins*, 859 N.W.2d 631, 636 (Iowa 2015).

"[W]e review a claim that the district court failed to apply the proper standard in ruling on a motion for new trial for errors at law." *State v. Ary*, 877 N.W.2d 686, 706 (Iowa 2016).

## III. Analysis.

On appeal, Shackford contends defense counsel rendered ineffective assistance in failing to challenge the sufficiency of the evidence to establish the charge of intimidation with a dangerous weapon with intent. Shackford also

contends counsel was ineffective for failing to object to testimony respecting out-of-court statements by Wright that Shackford was the driver who stopped in front of Armel's house on the night of the shooting.

To show ineffective assistance of trial counsel, Shackford must establish by a preponderance of the evidence: "(1) his trial counsel failed to perform an essential duty, and (2) this failure resulted in prejudice." *State v. Thorndike*, 860 N.W.2d 316, 320 (Iowa 2015) (citation omitted).

Shackford also asserts the district court failed to use the proper standard when ruling on Shackford's motion for new trial.

**(1) Sufficiency of the Evidence Establishing Intimidation with a Dangerous Weapon with Intent.**

Shackford maintains there is insufficient evidence to establish he committed intimidation with a dangerous weapon with intent.

Iowa Code section 708.6 provides:

> A person commits a class "C" felony when the person, with the intent to injure or provoke fear or anger in another, shoots, throws, launches, or discharges a dangerous weapon at, into, or in a building, vehicle, airplane, railroad engine, railroad car, or boat, occupied by another person, or within an assembly of people, and thereby places the occupants or people in reasonable apprehension of serious injury or threatens to commit such an act under circumstances raising a reasonable expectation that the threat will be carried out.

In Jury Instruction No. 27, the jury was instructed that to find Shackford guilty of intimidation with a dangerous weapon with intent:

> The State must prove all of the following elements of Intimidation With a Dangerous Weapon With Intent:
> 1. On or about April 17, 2016, the Defendant shot a firearm at or into a building which was occupied by the victim.

2. The firearm was a dangerous weapon, as explained in Instruction No. 26.

3. Tyler Armel actually experienced fear of serious injury and his fear was reasonable under the existing circumstances.

4. The Defendant shot the dangerous weapon with the specific intent to injure or cause fear or anger in Tyler Armel.

Although a defendant may be found guilty of intimidation with a dangerous weapon with intent by committing a number of different acts,[4] Instruction No. 27 only provided one alternative to the jury: Shackford "shot a firearm at or into a building which was occupied by the victim." Thus, there must be sufficient evidence Armel's home was "occupied" at the time of the shooting.

Shackford contends because Armel was outside his residence at the time of the shooting, there is insufficient evidence to show Shackford "shot a firearm at or into a building which was occupied by the victim." Shackford asserts trial counsel rendered ineffective assistance in failing to raise this particular issue.

---

[4] In State *v. Ross*, 845 N.W.2d 692, 699 (Iowa 2014), the court stated:

A plain reading of [Iowa Code section 708.6] indicates the general assembly intended to criminalize four alternative acts that would constitute intimidation with a dangerous weapon with intent.

The first act is when a person (1) has the specific intent to injure or provoke fear or anger in another; (2) shoots, throws, launches, or discharges a dangerous weapon; (3) at, into, or in a building, vehicle, airplane, railroad engine, railroad car, or boat; (4) that is occupied by another person; and (5) places the occupants in reasonable apprehension of serious injury.

The second act is when a person (1) has the specific intent to injure or provoke fear or anger in another; (2) shoots, throws, launches, or discharges a dangerous weapon; (3) within an assembly of people; and (4) the people are placed in reasonable apprehension of serious injury.

The third and fourth acts differ in only requiring [that] a person with the requisite intent threatens to shoot, throw, launch, or discharge a dangerous weapon in an occupied structure or vehicle or within an assembly of people.

The question is whether Iowa Code section 708.6 can be interpreted to define "occupied" in such a way that encompasses the facts of this case.

> We have consistently stated that the purpose of statutory interpretation is to determine legislative intent.
>> "We give words their ordinary and common meaning by considering the context within which they are used, absent a statutory definition or an established meaning in the law. We also consider the legislative history of a statute, including prior enactments, when ascertaining legislative intent. When we interpret a statute, we assess the statute in its entirety, not just isolated words or phrases."

*State v. Lindell*, 828 N.W.2d 1, 5 (Iowa 2013) (citation omitted). "[W]e construe criminal statues strictly and resolve doubts in favor of the accused." *Id.*

The State argues Armel "occupied" his home at the time of the shooting because he resided there. The State also asserts Armel "occupied" the home for purposes of section 708.6 because he was on the front porch of the home when the vehicle approached. We disagree.

First, the language of section 708.6 belies the State's assertion that "occupied" can be construed to mean an individual resides in the building. We acknowledge Iowa Code section 702.12 defines an "occupied structure" as

> any building, structure, appurtenances to buildings and structures, land, water or air vehicle, or similar place adapted for overnight accommodation of persons, or occupied by persons for the purpose of carrying on business or other activity therein, or for the storage or safekeeping of anything of value. Such a structure is an "occupied structure" whether or not a person is actually present. However, for purposes of chapter 713, a box, chest, safe, changer, or other object or device which is adapted or used for the deposit or storage of anything of value but which is too small or not designed to allow a person to physically enter or occupy it is not an "occupied structure."

Thus, as defined, "occupied structure" does not require a person to be inside the structure. However, Iowa code section 708.6 does not use the term "occupied structure."

Rather, in addition to a building, section 708.6 includes vehicles, airplanes, railroad engines, railroad cars, or boats as structures that may be "occupied" by a victim of the crime of intimidation with a dangerous weapon with intent. Certainly the legislature did not consider vehicles, airplanes, railroad engines, railroad cars, or boats as structures within which people typically reside or use for overnight accommodation as referenced in section 702.12. An ordinary and common understanding of "occupied," considered in context of the language of section 708.6, indicates "occupied" simply means an individual was inside the structure at the time the crime was committed, and thus placing the occupant "in reasonable apprehension of serious injury." *See Ross*, 845 N.W.2d at 699.

We also disagree Armel occupied the residence because he was on the front porch of the residence when the vehicle stopped in front of the house. Although for purposes of Fourth Amendment search and seizure the curtilage is considered part of the home,[5] it is not the common understanding that a home is "occupied" when an individual is outside the residence. Additionally, after the vehicle stopped in front of his home, Armel walked away from the house to the edge of the property toward the vehicle parked in the street. Even if Armel could be said to occupy the home while on the front porch, the crime was not "in progress" until shots were fired, at which time Armel was not on the front porch.

---

[5] *See State v. Lewis*, 675 N.W.2d 516, 523 (Iowa 2004) (discussing the protection provided by the Fourth Amendment to the curtilage of a home).

*See* Iowa Code § 702.13 ("A person is 'participating in a public offense,' during part or the entire period commencing with the first act done directly toward the commission of the offense and for the purpose of committing that offense, . . .").

If the legislature intended to include appurtenances to buildings within the meaning of "occupied," it could have done so. *See* Iowa Code § 702.12 ("An 'occupied structure' is any building, structure, appurtenances to buildings and structures, . . . Such structure is an 'occupied structure' whether or not a person is actually present."). For purposes of 708.6, the legislature did not use the terms "occupied structure" or "appurtenances" and, thus, it seems clear the legislature intended a person to be present and actually inside one of the specified structures or vehicles during the commission of the crime under the alternative upon which the jury was instructed.

We find under the ordinary and common meaning, the home was not "occupied" at the time of the shooting. Armel stated he and his friends were outside the home at the time of the shooting, and the State offered no evidence establishing any individual was within the home during the commission of the crime.

We find trial counsel rendered ineffective assistance in failing to raise this specific sufficiency-of-the-evidence objection at trial. If trial counsel had made such an objection, the district court would have properly dismissed the intimidation-with-a-dangerous-weapon charge. We reverse the judgment for intimidation with

a dangerous weapon with intent and remand the case for dismissal of that charge. *See State v. Brubaker*, 805 N.W.2d 164, 174 (Iowa 2011).[6]

### (2) Out-of-Court Statements.

Shackford also contends trial counsel rendered ineffective assistance in failing to object to testimony regarding Wright's statement identifying Shackford as the driver of the vehicle stopped in front of Armel's home on April 17. Shackford asserts trial counsel should have objected to Armel's testimony regarding Wright's statements on hearsay and confrontation-clause grounds, and Shackford was prejudiced by the failure to object to such testimony because it bolstered the main issue at trial: the identity of the shooter.

"[E]rroneous admission of hearsay is presumed to be prejudicial unless the contrary is established affirmatively. However, we will not find prejudice if the admitted hearsay is merely cumulative." *State v. Neitzel*, 801 N.W.2d 612, 623 (Iowa 2011) (citation omitted) (alteration in original). Here, Armel—the victim of the crime—identified Shackford as the shooter during his testimony at trial. Thus, any testimony regarding Wright's statements as to the shooter's identity were merely cumulative and not prejudicial to Shackford.[7] Although, we acknowledge the statement would then not serve as substantive evidence of identity. Notwithstanding, the jury heard both Armel's testimony identifying Shackford as

---

[6] The lesser-included offense of intimidation with a dangerous weapon without intent would have also been dismissed because the elements are the same except it lacks the element of intent to provoke fear or anger.

[7] We also note the testimony of Wright's out-of-court statements may have been offered to explain why Armel did not go into the house, and would be admissible because it was not offered to prove the truth of the matter asserted. Iowa R. Evid. 5.801(c)(2). The State also suggests the testimony may have been admissible as an excited utterance under Iowa Rule of Evidence 5.803(2).

the perpetrator of the crime and each of the defense witness's testimony providing alibi evidence. We find significant that this was not a case where Armel was only slightly familiar with Shackford. To the contrary, the two had been in several altercations together—including one earlier that night—and obviously knew each other very well. Clearly the jury rejected Shackford's alibi defense. It is the function of the jury to assess the credibility of the witnesses. *See State v. Dudley*, 856 N.W.2d 668, 676 (Iowa 2014).

Because we find no prejudice, we conclude Shackford has not established trial counsel provided ineffective assistance in failing to object to the testimony respecting out-of-court statements made by Wright.

**(3) Motion for New Trial.**

Last, Shackford maintains the district court applied an improper standard when ruling on the motion for new trial. In the motion, Shackford argued the verdict was contrary to the weight of the evidence. At the sentencing hearing held April 4, 2017, the district court ruled on the motion for new trial:

> A motion for new trial was filed by the defense. It asserts that the weight of the evidence does not support the verdict in that it is contrary to law.
> The State has resisted this motion, asserting that adequate evidence supports the verdict and that the question here was simply one of whether the jury believed the testimony of the defense witnesses or whether they believed the testimony of Mr. Armel.
> The court recognizes, having heard the testimony of the parties, that much of the defense testimony was compelling and that the jury may very well have believed it. They did not.
> And it is the province of the jury to weigh the credibility of the witnesses, and in this case they, by virtue of their verdict, demonstrated that they believed the testimony of Mr. Armel.
> For that reason, the motion made by the defense is overruled. An appellate court can review the complete record and analyze whether or not the decision on the motion made by the defense at this stage is appropriate.

Shackford asserts, "Instead of making its own assessment of the credibility of the evidence, the court instead relied upon the more deferential 'sufficiency of the evidence' standard, finding that a question had been created for the jury."

> Iowa Rule of Criminal Procedure 2.24(2)(b)(6) permits a district court to grant a motion for new trial when a verdict is contrary to the weight of the evidence. A verdict is contrary to the weight of the evidence only when "a greater amount of credible evidence supports one side of an issue or cause than the other."
>
> The weight-of-the-evidence standard requires the district court to consider whether more "credible evidence" supports the verdict rendered than supports the alternative verdict. It is broader than the sufficiency-of-the-evidence standard in that it permits the court to consider the credibility of witnesses. Nonetheless, it is also more stringent than the sufficiency-of-the-evidence standard in that it allows the court to grant a motion for new trial only if more evidence supports the alternative verdict as opposed to the verdict rendered. The question for the court is not whether there was sufficient credible evidence to support the verdict rendered or an alternative verdict, but whether "a greater amount of credible evidence" suggests the verdict rendered was a miscarriage of justice.

*Ary*, 877 N.W.2d at 706 (citations omitted). In ruling on a motion for new trial,

> [t]he discretion of the trial court should be exercised in all cases in the interest of justice, and, where it appears to the judge that the verdict is against the weight of the evidence, it is his imperative duty to set it aside. "We do not mean . . . that he is to substitute his own judgment in all cases for the judgment of the jury, for it is their province to settle questions of fact; and, when the evidence is nearly balanced, or is such that different minds would naturally and fairly come to different conclusions thereon, he has no right to disturb the findings of the jury, although his own judgment might incline him the other way. In other words, the finding of the jury is to be upheld by him as against any mere doubts of its correctness. But when his judgment tells him that it is wrong, that, whether from mistake, or prejudice, or other cause, the jury . . . erred, and found against the fair preponderance of the evidence, then no doubt is more imperative than that of setting aside the verdict, and remanding the question to another jury."

*State v. Reeves*, 670 N.W.2d 199, 203 (Iowa 2003) (citations omitted).

The district court considered the evidence in this case presented by the defense as well as the State. The court found no mistake, prejudice, or other cause requiring divergence from the jury's credibility findings. Here, where the evidence was fairly balanced, and such that different minds could fairly come to different conclusions, the court correctly did not disturb the findings of the jury. We do not find the court used an improper standard when ruling on the motion for new trial on the basis the verdict was contrary to the weight of the evidence or that the court erred in denying the motion as it related to the willful-injury-causing-bodily-injury count.

## IV. Conclusion.

We find Shackford has not established ineffective assistance of counsel regarding trial counsel's failure to object to testimony respecting out-of-court statements made by Wright. We also find the district court utilized the proper standard when ruling on the motion for new trial and properly denied the motion as it related to the willful-injury-causing-bodily-injury count. We thus affirm on these issues. We do conclude trial counsel rendered ineffective assistance in failing to object to the sufficiency of the evidence for the intimidation-with-a-dangerous-weapon charge and reverse and remand to the district court for dismissal of the charge of intimidation with a dangerous weapon with intent and entry of a corrected judgment.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**